******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROLANDO ROBLES *v.* COMMISSIONER
OF CORRECTION
(AC 37686)

DiPentima, C. J., and Alvord and Pellegrino, Js.

*Argued September 12—officially released December 20, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Oliver, J.)

*Naomi T. Fetterman*, for the appellant (petitioner).

*Lisa A. Riggione*, senior assistant state's attorney,

with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Jo Anne Sulik*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

DiPENTIMA, C. J. The petitioner, Rolando Robles, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner argues that the habeas court improperly denied his petition because his guilty pleas, made pursuant to the *Alford* doctrine,[1] were not made knowingly, intelligently and voluntarily as a result of the new interpretation of our kidnapping statutes as detailed in *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008), and its progeny. We conclude that the petitioner's specific claim regarding the knowing and intelligent nature of his pleas was not raised to or decided by the habeas court. Accordingly, we decline to review his appellate claim and affirm the judgment of the habeas court.

The following facts and procedural history underlie our discussion. The state charged the petitioner with kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), attempt to commit kidnapping in the first degree in violation of General Statutes §§ 53a-49 and 53a-92 (a) (2) (A) (kidnapping offenses) and sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (2). See *State* v. *Robles*, 169 Conn. App. 127, 128–29,    A.3d    (2016). On August 29, 2007, the petitioner appeared before the trial court, *Miano*, *J.*, to enter guilty pleas to these charges. Id., 129. After some discussion, the court accepted the petitioner's guilty pleas pursuant to the *Alford* doctrine. Id., 129–30.

During the plea proceeding, the prosecutor set forth the following factual bases underlying the charges against the petitioner. "[T]hat's an incident that happened on December 15, 2005, and it was in the area of Sigourney Street and Russ Street. The complainant, the victim, was a seventeen year old female. She was on her way to school at Hartford Public High School when [the petitioner] came up from behind her. He grabbed her and had sexual contact placing his hand on her buttocks area and genital area and that was over her clothing. She was able to push him away.

"He followed her. A short distance later he pulled her by the jacket. He attempted to pull her back behind the apartment building, and these were her words, she was able to break free. Her jacket did rip. And she was able to gain freedom. A later identification was made after she filed this complaint and told family members. One family member had seen him. And she ultimately positively identified the [petitioner] as the person who had done this to her.

"The next incident . . . that happened five days later on December 20, 2005, in the morning hours, 8:40 in the a.m., near the intersection of Capitol Avenue and Laurel Street. This [incident] involved a sixteen year old female. She was walking to school. She observed

the [petitioner] following her. He did catch up with her in that area of Capitol Avenue and Laurel Street. He grabbed her from behind and attempted to pull her or drag her into a fenced area. She also fought back and freed herself after a short scuffle with him." (Internal quotation marks omitted.) Id., 129 n.2. Following his conviction, the court sentenced the petitioner to fifteen years incarceration, execution suspended after time served, and twenty years of probation.[2] Id., 130.

Following the petitioner's conviction, our Supreme Court reinterpreted the intent element of our kidnapping statutes. In *State* v. *Salamon*, supra, 287 Conn. 542, it stated: "Our legislature, in replacing a single, broadly worded kidnapping provision with a gradated scheme that distinguishes kidnappings from unlawful restraints by the presence of an intent to prevent a victim's liberation, intended to exclude from the scope of the more serious crime of kidnapping and its accompanying severe penalties those confinements or movements of a victim that are merely incidental to and necessary for the commission of another crime against that victim. Stated otherwise, to commit a kidnapping in conjunction with another crime, a defendant must intend to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit the other crime."

Our Supreme Court further noted that "[w]hen that confinement or movement is merely incidental to the commission of another crime, however, the confinement or movement must have exceeded that which was necessary to commit the other crime. [T]he guiding principle is whether the [confinement or movement] was so much the part of another substantive crime that the substantive crime could not have been committed without such acts . . . . In other words, the test . . . to determine whether [the] confinements or movements involved [were] such that kidnapping may also be charged and prosecuted when an offense separate from kidnapping has occurred asks whether the confinement, movement, or detention was merely incidental to the accompanying felony or whether it was significant enough, in and of itself, to warrant independent prosecution. . . . Conversely, a defendant may be convicted of both kidnapping and another substantive crime if, at any time prior to, during or after the commission of that other crime, the victim is moved or confined in a way that has independent criminal significance, that is, the victim was restrained to an extent exceeding that which was necessary to accomplish or complete the other crime." (Citations omitted; internal quotation marks omitted.) Id., 546–47.

In January, 2012, the petitioner commenced the present action. On February 21, 2014, the petitioner filed an amended petition for a writ of habeas corpus (operative petition). In count one, he alleged illegal confinement

because his conviction for the kidnapping offenses was unconstitutional. Specifically, he argued that § 53a-92 was unconstitutional under both the federal and state constitutions and that our Supreme Court's decisions in *Salamon* and its progeny[3] were subject to retroactive application as set forth in *Luurtsema* v. *Commissioner of Correction*, 299 Conn. 740, 12 A.3d 817 (2011).[4] The petitioner then iterated the general claim that his conviction for the kidnapping offenses was based on a violation of the federal and state constitutions. In count two of the operative petition, the petitioner alleged ineffective assistance of his counsel, Attorney Robert Meredith. There was no allegation in this count that his pleas were not knowing, intelligent and voluntary.

The habeas court conducted a trial on June 30, 2014. Meredith and the petitioner were the only witnesses to testify at the trial. The parties filed posttrial briefs on August 6, 2014. On December 16, 2014, the habeas court, *Oliver*, *J.*, issued a written memorandum of decision denying the petition for a writ of habeas corpus. With respect to the claim of illegal confinement, the court rejected the special defense of procedural default advanced by the respondent, the Commissioner of Correction. The court noted that *Salamon*'s reinterpretation of our kidnapping jurisprudence arose in the context of an improper jury instruction. In an attempt to reconcile the posture of that case with that of the petitioner's guilty pleas, the court determined that "the petitioner would need to establish the probability that not a single reasonable juror, properly instructed as to the elements of kidnapping under *Salamon*, would have voted to find him guilty of the challenged charges had the case gone to trial."[5] The court, after reviewing the record, and discrediting the petitioner's testimony,[6] concluded that at least one juror, properly instructed, would have voted to convict him of the kidnapping charges. The court also rejected the petitioner's ineffective assistance of counsel claim, and denied the petition for a writ of habeas corpus.[7] On December 23, 2014, the court granted the petition for certification to appeal.

On appeal, the petitioner claims that his pleas to the kidnapping charges were invalid. Specifically, he argues that his pleas were not knowing, intelligent and voluntary because the retroactive application of *Salamon* required a factual basis,[8] absent from the record in this case, that he had intended to prevent the liberation of the victims for a longer period of time, or to a greater degree, than that which was necessary to commit the sexual assault. In turn, the respondent argues that, to the extent that the petitioner had raised a due process challenge based on the sufficiency of the evidence, this claim was waived by operation of his guilty plea. The respondent further contends that, to the extent that the petitioner had raised an actual innocence claim, the habeas court properly rejected it.

We conclude that the respondent has misidentified or misinterpreted the petitioner's appellate claim. We further conclude, however, that the claim raised in this appeal was not presented to or decided by the habeas court. As a result, we decline to consider its merits. Accordingly, we affirm the judgment of the habeas court.

A brief discussion of the relevant law on whether a plea was made knowingly, intelligently and voluntarily will facilitate our discussion. "[I]f a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void." (Internal quotation marks omitted.) *Paulsen* v. *Manson*, 203 Conn. 484, 489, 525 A.2d 1315 (1987); see also *State* v. *Niblack*, 220 Conn. 270, 278, 596 A.2d 407 (1991). A determination of whether a plea was knowingly and voluntarily made requires an examination of all the relevant circumstances. *State* v. *Wright*, 207 Conn. 276, 287, 542 A.2d 299 (1988); *State* v. *Velez*, 30 Conn. App. 9, 21, 618 A.2d 1362, cert. denied, 225 Conn. 907, 621 A.2d 289 (1993). "In choosing to plead guilty, the defendant is waiving several constitutional rights, including his privilege against self-incrimination, his right to trial by jury, and his right to confront his accusers." (Internal quotation marks omitted.) *State* v. *Greene*, 274 Conn. 134, 144, 874 A.2d 750 (2005), cert. denied, 548 U.S. 926, 126 S. Ct. 2981, 165 L. Ed. 2d 988 (2006); see also *Boykin* v. *Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *State* v. *Carter*, 243 Conn. 392, 397, 703 A.2d 763 (1997).

In *State* v. *Niblack*, supra, 220 Conn. 281, our Supreme Court iterated that "our state courts are under no constitutionally imposed duty to establish a factual basis for a guilty plea prior to its acceptance unless the judge is put on notice that there may be some need for such an inquiry." See also *State* v. *Greene*, supra, 274 Conn. 149; *State* v. *Velez*, supra, 30 Conn. App. 21. This rule was applied in the context of an *Alford* plea in *Ghant* v. *Commissioner of Correction*, 255 Conn. 1, 14–15, 761 A.2d 740 (2000); see also *Baillargeon* v. *Commissioner of Correction*, 67 Conn. App. 716, 730, 789 A.2d 1046 (2002) (our procedural rules do not require factual basis for court to accept *Alford* plea).[9] Put another way, a factual basis is but one way of satisfying the requirement that a plea be knowing and voluntary. *Paulsen* v. *Manson*, supra, 203 Conn. 491.

In the present case, the operative petition alleged a broad claim of illegal confinement as a result of the petitioner's conviction for the kidnapping offenses that was obtained in violation of his federal and state constitutional rights. The petitioner, however, failed to include a specific claim that his pleas were not made knowingly, intelligently and voluntarily as a result of the subsequent modification to the intent requirement for kidnapping charges as set forth in *Salamon*. "In a

writ of habeas corpus alleging illegal confinement the application must set forth specific grounds for the issuance of the writ including the basis for the claim of illegal confinement. . . . [T]he petition for a writ of habeas corpus is essentially a pleading and, as such, it should conform generally to a complaint in a civil action. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint." (Internal quotation marks omitted.) *Thiersaint* v. *Commissioner of Correction*, 316 Conn. 89, 125, 111 A.3d 829 (2015); *Zuberi* v. *Commissioner of Correction*, 140 Conn. App. 839, 844–45, 60 A.3d 337, cert. denied, 308 Conn. 931, 64 A.3d 330 (2013).

During the habeas trial, the petitioner's counsel asked Meredith if he was aware that cases regarding the kidnapping statutes were before our Supreme Court at the time he had advised the petitioner and when the petitioner entered his pleas. Meredith responded in the negative. The petitioner testified that he questioned Meredith as to how his conduct could have fallen within the statutory parameters of kidnapping. The petitioner further stated that he was willing to challenge the law and file an appeal if necessary. He indicated that as a result of Meredith's indifference to his circumstances, the petitioner felt "helpless [and] powerless . . . ." After further testimony, the petitioner indicated that he had agreed to the *Alford* pleas because he "believed at the time that [his] conduct constituted the charge of kidnapping."

The issue of whether the petitioner's pleas were not knowingly and voluntarily entered and, therefore, a violation of due process, was not addressed at any point during the habeas trial.[10] There was no indication at the habeas trial that the petitioner raised the specific legal claim that his *Alford* pleas were not knowing, intelligent and voluntary, and therefore a violation of due process. At no point did the petitioner raise the issue of the need for an inquiry into the factual basis of the pleas. The petitioner did indicate that, if he had known of the pending cases before our Supreme Court at the time of his pleas, he would have insisted on going to trial even if he had been sentenced to more than eight decades of incarceration. This statement, however, applied to his claim of ineffective assistance of counsel and did not alert the habeas court to the due process claim that he subsequently has raised in this appeal.

In his posttrial brief, the petitioner argued that § 53a-92 was held to be unconstitutional by our Supreme Court in *State* v. *Salamon*, supra, 287 Conn. 509, and its progeny, and that those decisions could be applied retroactively pursuant to *Luurtsema* v. *Commissioner of Correction*, supra, 299 Conn. 740. He then asserted that "[u]nder the *Salamon-Sanseverino* interpretation of the kidnapping statute, and the following case law, no reasonable interpretation of the facts alleged here

can constitute the basis of a kidnapping conviction under current law, and as such the convictions for kidnapping [in the first degree], and [attempt to commit kidnapping in the first degree] should be vacated, and the petitioner argues, dismissed a matter of law." Essentially, the posttrial brief clarified his argument to the habeas court that there was insufficient evidence, following *Salamon*, to sustain his conviction of the kidnapping offenses.

The failure of the petitioner to raise the due process claim that his pleas were not knowing and voluntary before the habeas court is fatal to his appeal. It is well established that "this court is not bound to consider any claimed error unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim. . . . It is equally well settled that a party cannot submit a case to the trial court on one theory and then seek a reversal in the reviewing court on another." (Citations omitted; internal quotation marks omitted.) *Mitchell* v. *Commissioner of Correction*, 156 Conn. App. 402, 408–409, 114 A.3d 168, cert. denied, 317 Conn. 904, 114 A.3d 1220 (2015); see also *Greene* v. *Commissioner of Correction*, 131 Conn. App. 820, 822, 29 A.3d 171 (2011) (having not raised issue before habeas court petitioner was barred from raising it on appeal), cert. denied, 303 Conn. 936, 36 A.3d 695 (2012); *Lewis* v. *Commissioner of Correction*, 117 Conn. App. 120, 126, 977 A.2d 772 (to review claim not raised before and decided by habeas court adversely to appellant would amount to ambuscade of habeas judge), cert. denied, 294 Conn. 904, 982 A.2d 647 (2009); see generally *Thiersaint* v. *Commissioner of Correction*, supra, 316 Conn. 126–28.

In the present case, the petitioner alleged in the operative petition a broad claim of a constitutional violation but did not include a distinct allegation that his pleas were not knowing, intelligent and voluntary as a result of *Salamon*. See, e.g., *Davis* v. *Commissioner of Correction*, 160 Conn. App. 444, 451, 124 A.3d 992, cert. denied, 319 Conn. 957, 125 A.3d 1012 (2015). The ambiguity of the pleading failed to place the habeas court on notice of this specific claim. Id., 452–53; see also *Newland* v. *Commissioner of Correction*, 322 Conn. 664, 678–79, 142 A.3d 1095 (2016) (habeas petition contained no allegation of claim raised on appeal and petitioner never attempted to amend petition to include such allegation pursuant to Practice Book § 23-32). Further, during the trial, the petitioner did not notify or advise the habeas court that his due process claim of pleas that were not knowing, intelligent and voluntary was imbedded within the allegations of the operative petition. See *Davis* v. *Commissioner of Correction*, supra, 453–54. Simply put, the claim raised in this appeal was not distinctly raised before the habeas court. On that basis, we are unable to review it. See, e.g., *Hender-*

*son* v. *Commissioner of Correction*, 129 Conn. App. 188, 198, 19 A.3d 705, cert. denied, 303 Conn. 901, 31 A.3d 1177 (2011).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant is not required to admit his guilt . . . but consents to being punished as if he were guilty to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." (Internal quotation marks omitted.) *State* v. *Robles*, 169 Conn. App. 127, 128 n.1,     A.3d     (2016). A defendant often pleads guilty under the *Alford* doctrine "to avoid the imposition of a possibly more serious punishment after trial." (Internal quotation marks omitted.) *State* v. *Peterson*, 51 Conn. App. 645, 647 n.1, 725 A.2d 333, cert. denied, 248 Conn. 905, 731 A.2d 310 (1999).

[2] At the time of sentencing, the petitioner had been incarcerated for approximately twenty months.

[3] See *State* v. *Sanseverino*, 287 Conn. 608, 949 A.2d 1156 (2008), overruled in part by *State* v. *DeJesus*, 288 Conn. 418, 437, 953 A.2d 45 (2008), and superseded in part after reconsideration by *State* v. *Sanseverino*, 291 Conn. 574, 969 A.2d 710 (2009).

[4] In *Luurtsema*, our Supreme Court held that "*Salamon* should be afforded fully retroactive effect in this particular case" as a matter of state common law. *Luurtsema* v. *Commissioner of Correction*, supra, 299 Conn. 751. The retroactivity rule of *Luurtsema*, however, does not apply necessarily in every case: "We . . . conclude that, when an appellate court provides a new interpretation of a substantive criminal statute, an inmate convicted under a prior, more expansive reading of the statute presumptively will be entitled to the benefit of the new interpretation on collateral attack. *We decline, however, the petitioner's invitation to adopt a per se rule in favor of full retroactivity.* We do so because a review of the diverse contexts in which such challenges have arisen persuades us that there are various situations in which to deny retroactive relief may be neither arbitrary nor unjust." (Emphasis added.) Id., 760.

[5] The habeas court cited to *United States* v. *Scruggs*, 916 F. Supp. 2d 670, 672 (N.D. Miss. 2012), aff'd, 714 F.3d 258 (5th Cir. 2013), where the defendant, Richard F. Scruggs, filed a motion to vacate and set aside his conviction following his guilty plea. Scruggs claimed that, following the United States Supreme Court's decision in *Skilling* v. *United States*, 561 U.S. 358, 130 S. Ct. 2896, 177 L. Ed. 2d 619 (2010), he was "actually innocent of the crime to which he pled guilty." *United States* v. *Scruggs*, supra, 674. The District Court concluded that Scruggs bore a heavy burden to overcome procedural default and prevail on this motion to set aside the verdict. Id., 675. It noted that Scruggs had to prove his actual innocence of the crime that he had pleaded guilty to, as well as the charges dismissed in the original indictment. Id. "To establish actual innocence, [a] petitioner must demonstrate that, in light of all of the evidence, it is more likely than not that no reasonable juror would have convicted him. . . . The actual innocence standard does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty. . . . The standard is not satisfied where at least one juror, acting reasonably and properly instructed, would vote to convict the petitioner." (Citations omitted; internal quotation marks omitted.) Id., 675–76.

In *Barile* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. CV-10-4003798, 2013 WL 4873478, *5 (August 13, 2013), also cited by the habeas court in the present case, the court used the "actual innocence" standard from *Scruggs*. In *Barile*, the petitioner pleaded guilty to, inter alia, six counts of kidnapping in the first degree. In count two of his habeas petition, he alleged that his kidnapping conviction was obtained in violation of his right to due process because it was based on conduct that subsequently was determined not to be a crime in *Salamon*. He also alleged that his plea was not knowing, intelligent and voluntary "as a result of the substantive narrowing of the definition of kidnapping by the *Salamon* case." *Barile* v. *Warden*, supra, *2.

The respondent in *Barile* argued that the petitioner's claim that his plea was not knowingly, intelligently and voluntarily made was essentially a sufficiency challenge and had been waived as a result of his guilty plea.

The petitioner countered that his claim was not a sufficiency challenge, but rather one of actual innocence. The habeas court in *Barile* agreed with the petitioner and applied the "actual innocence" standard from *Scruggs*. *Barile* v. *Warden*, supra, 2013 WL 4873478, *5.

In his brief to this court, the petitioner claims that the habeas court's use of the actual innocence standard was improper. We conclude that the petitioner did not make a claim of actual innocence before either the habeas court or this court. After a thorough review of the record, it appears that the petitioner challenged the sufficiency of the evidence before the habeas court. Specifically, he argued that there was nothing in the record to support the intent element for the kidnapping offenses following *Salamon*, and therefore his pleas were not valid.

On appeal, the petitioner unquestionably raises a due process challenge with respect to his pleas to the kidnapping offenses. As we explain in this opinion, this claim raised on appeal was not presented to the habeas court. As a result of our conclusion that the petitioner failed to raise his specific challenge that his pleas were not made knowingly and voluntarily as a result of the *Salamon* and *Luurtsema* decisions, and therefore we need not address it on the merits, we decline to discuss the propriety of the use of the actual innocence standard by the habeas court.

[6] Specifically, the habeas court found "the petitioner's testimony [to be] self-serving, equivocal and utterly lacking in credibility."

[7] The petitioner has not appealed from the denial of his ineffective assistance of counsel claim.

[8] "A factual basis exists where the facts before the court are sufficient to establish each and every element of the crime charged. . . . In determining whether a factual basis exists, the court may consider the facts recited by the state's attorney as well as any other facts properly submitted to the court which supports a conviction." (Citation omitted; internal quotation marks omitted.) *State* v. *Turner*, 91 Conn. App. 17, 21, 879 A.2d 471, cert. denied, 276 Conn. 910, 886 A.2d 424 (2005).

[9] It was recognized, however, that "[a] court may nevertheless, in its discretion, require a factual basis before accepting a nolo contendere or *Alford* plea." *Baillargeon* v. *Commissioner of Correction*, supra, 67 Conn. App. 730 n.10.

[10] The habeas court's memorandum of decision stated: "The petitioner alleges that his guilty plea was not knowing, intelligent and voluntary as a result of the substantive narrowing of the definition of kidnapping by the *Salamon* case." Despite this statement by the habeas court, the habeas court did not conduct an analysis of this due process claim. Instead, the court first rejected the respondent's defense of procedural default. It then applied the actual innocence standard and found "that there [was] a probability that at least one reasonable juror, properly instructed under *Salamon*, could have concluded that the petitioner's restraint, and attempted restraint, of the victims was not merely incidental to the sexual assault and voted to convict him at trial." It did not discuss whether a due process violation resulting from pleas that were not made knowingly and voluntarily had occurred.

As noted in footnote 5 of this opinion, the habeas court cited to *Barile* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. CV-10-4003798, 2013 WL 4873478 (August 13, 2013), a case in which the petitioner had alleged that his plea was not knowing, intelligent and voluntary as a result of the substantive narrowing, in *Salamon*, of the definition of kidnapping. In response to the respondent's special defense of waiver in that case, the petitioner argued that his claim was one of actual innocence. The habeas court in *Barile* agreed with the petitioner and decided that case on the basis of whether the petitioner had satisfied that actual innocence standard. *Barile* v. *Warden*, supra, *5. In other words, the court in that case focused its analysis on the claim of actual innocence, despite mentioning the issue of whether the plea was constitutionally valid. Similarly, in the present case, although the court mentioned, in an isolated statement, that the petitioner's claim was that his plea was not knowing, intelligent and voluntary, we conclude that it considered the claim to be one of actual innocence. But see footnote 5 of this opinion (petitioner did not make claim of actual innocence). The substance of the court's reasoning supports this conclusion. We further iterate that the petitioner did not specifically plead a due process claim based on a plea that was not knowing and voluntary, nor did he mention this specific issue during the habeas trial.