******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

ANNA SMORODSKA *v.* COMMISSIONER
OF CORRECTION
(AC 44881)

Alvord, Cradle and DiPentima, Js.

*Syllabus*

The petitioner, who had been convicted, on a plea of guilty, of, inter alia, arson in the first degree, sought a writ of habeas corpus, claiming that her trial counsel, S, rendered ineffective assistance by failing to properly advise her about the immigration consequences of her pleading guilty. The petitioner was born in Ukraine, entered the United States on a temporary visa that had expired, and was not lawfully residing in the country at the time of her arrest and conviction. S testified at the habeas trial that he advised the petitioner that arson in the first degree constituted an aggravated felony that subjected the petitioner to deportation and removal, that the assumption and the presumption should be that she would be deported or removed, and that he made no representation to the petitioner that anything could occur aside from her being deported for an aggravated felony conviction. S further testified that he informed the petitioner that a plea pursuant to *North Carolina* v. *Alford* (400 U.S. 25) "may or may not" have an effect on the matters considered by immigration officials, but it would not rescue her from being deported or reduce the strength of the case the immigration authorities had against her. The petitioner ultimately pleaded guilty pursuant to the *Alford* doctrine. Following trial, the habeas court denied the petition for a writ of habeas corpus, finding that S had unequivocally conveyed to the petitioner that the immigration consequences of her guilty plea to a charge of arson in the first degree was deportation mandated by federal law, that there was no credible evidence that S failed to adequately advise or affirmatively misadvised the petitioner about the deportation consequences of her plea agreement, and that the likelihood of deportation was sufficiently explained to the petitioner. On the petitioner's appeal to this court, *held* that the habeas court properly concluded that S did not render deficient performance in advising the petitioner of the immigration consequences of her *Alford* plea and properly rejected her claim of ineffective assistance of counsel: S made no representation to the petitioner that anything could occur aside from her being deported for an aggravated felony conviction and, therefore, S's advice to the petitioner regarding the likelihood of her deportation resulting from her plea to an aggravated felony was accurate, unequivocal, and comported with the requirements of state and federal law; moreover, even assuming that S's advice expressed equivocation as to the likelihood of enforcement, that advice did not negate the import of S's repeated and unequivocal advice stating that, regardless of his uncertainty as to the effect of the *Alford* plea on immigration authorities, the clear consequence of the petitioner's *Alford* plea was deportation.

Argued September 15—officially released December 27, 2022

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Oliver, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Robert L. O'Brien*, assigned counsel, with whom, on the brief, was *Christopher Y. Duby*, assigned counsel, for the appellant (petitioner).

*Meryl R. Gersz*, deputy assistant state's attorney, with

whom, on the brief, were *Stephen J. Sedensky III*, former state's attorney, and *Jo Anne Sulik*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

DiPENTIMA, J. The petitioner, Anna Smorodska, appeals from the judgment of the habeas court denying her petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly concluded that her trial counsel did not render ineffective assistance in advising her about the immigration consequences of her pleading guilty pursuant to the *Alford* doctrine.[1] We affirm the judgment of the habeas court.

The following facts and procedural history are relevant to our resolution of this appeal. The petitioner was arrested on December 14, 2015, in connection with allegations that she started fires in the middle of the night in the yard of a residence of her former boyfriend that caused damage to flammable, inflatable Christmas decorations and to a corner of the house. The petitioner admitted to police that she had burned love letters in the yard and had attempted to burn the inflatable decorations. The petitioner pleaded guilty pursuant to the *Alford* doctrine to arson in the first degree in violation of General Statutes § 53a-111, threatening in the second degree in violation of General Statutes (Rev. to 2015) § 53a-62, and criminal violation of a protective order in violation of General Statutes § 53a-223. During the plea process, the petitioner was represented by Attorney Stephan Seeger. The trial court, *Shaban, J.*, sentenced the petitioner to a total effective sentence of three and one-half years of incarceration, followed by six and one-half years of special parole. The petitioner was born in Ukraine, entered the United States on a temporary visa that expired in August, 2014, and was not lawfully residing in the country at the time of her arrest and conviction.

In an amended petition for a writ of habeas corpus, filed in July, 2020, the petitioner alleged, inter alia, that Seeger provided ineffective assistance of counsel by failing to advise her adequately regarding the immigration consequences of her *Alford* plea.[2] Following trial, the habeas court, *Oliver, J.*, issued a memorandum of decision on June 18, 2021, denying the petition for a writ of habeas corpus. The court concluded that the petitioner had failed to establish deficient performance.[3] In so deciding, the court stated: "Attorney Seeger testified at the habeas trial that he advised the petitioner that arson in the first degree constituted an 'aggravated felony' that subjected the petitioner to deportation and removal. He testified that he told her that 'the assumption and the presumption should be that she would be deported or removed' and that he made no representation to the petitioner that anything could occur aside from her being deported for an aggravated felony conviction. Attorney Seeger further testified that he informed the petitioner that her *Alford* plea 'may or may not' have an effect on the matters considered by immigration officials, but it would not

rescue her from being deported or reduce the strength of the case the immigration authorities had against her. He testified that he did not discuss the federal enforcement practices for deportation pursuant to an aggravated felony conviction beyond advising the petitioner that such a conviction would result in her deportation or removal. . . . Given the foregoing, and after a careful examination of the evidence, the court concludes that Attorney Seeger unequivocally conveyed to the petitioner that the immigration consequences of her guilty plea to an arson in the first degree charge was deportation mandated by federal law. There is no credible evidence that Attorney Seeger . . . failed to adequately advise or affirmatively misadvise[d] the petitioner about the deportation consequences of her plea agreement. The likelihood of deportation was sufficiently explained to the petitioner." Thereafter, the petitioner filed a petition for certification to appeal, which the court granted. This appeal followed.

On appeal, the petitioner claims that the court improperly concluded that she had not established that Seeger was deficient in his performance for failing to advise her adequately of the immigration consequences of her *Alford* plea. Specifically, she contends that Seeger was "abundantly, bluntly clear in his immigration advice in this case—until he was not. Advice cannot be clear and unequivocal if a portion of that advice gives false hope . . . . [Seeger] . . . testified that he advised the petitioner that she should assume she would be removed as a result of her conviction . . . . Although he could not testify that he advised the petitioner that her removal was a 'certainty,' his advice otherwise was clear up to this point. However, that is when the topic of the *Alford* plea crept into the conversations between Seeger and the petitioner. By Seeger's own admission, he advised the petitioner that an *Alford* plea 'may or may not have an effect on what immigration authorities [consider].' His own words were 'may or may not.' . . . That is equivocation." (Footnotes omitted.) Alternatively, she argues that Seeger's "may or may not" advice concerned the likelihood of enforcement and negated the import of the overall immigration advice that he had conveyed.

The following legal principles and standard of review guide our analysis. "The sixth amendment to the United States constitution, made applicable to the states through the due process clause of the fourteenth amendment, affords criminal defendants the right to effective assistance of counsel. . . . Although a challenge to the facts found by the habeas court is reviewed under the clearly erroneous standard, whether those facts constituted a violation of the petitioner's rights under the sixth amendment is a mixed determination of law and fact that requires the application of legal principles to the historical facts of this case. . . . It is well established that the failure to adequately advise a

client regarding a plea offer from the state can form the basis for a sixth amendment claim of ineffective assistance of counsel. . . . To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. . . . The petitioner has the burden to establish that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . . An ineffective assistance of counsel claim will succeed only if both prongs [of *Strickland*] are satisfied." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Duncan* v. *Commissioner of Correction*, 171 Conn. App. 635, 646–48, 157 A.3d 1169, cert. denied, 325 Conn. 923, 159 A.3d 1172 (2017).

"A claim of ineffective assistance of counsel raised by a petitioner who faces mandatory deportation as a consequence of [her] guilty plea is analyzed more particularly under *Padilla* v. *Kentucky*, [559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010)], a case in which the United States Supreme Court held that counsel must inform clients accurately as to whether a guilty plea carries a risk of deportation." (Internal quotation marks omitted.) *Olorunfunmi* v. *Commissioner of Correction*, 211 Conn. App. 291, 305, 272 A.3d 716, cert. denied, 343 Conn. 929, 281 A.3d 1186 (2022). Our Supreme Court analyzed *Padilla* under Connecticut law in *Budziszewski* v. *Commissioner of Correction*, 322 Conn. 504, 142 A.3d 243 (2016), stating: "In *Padilla* . . . the United States Supreme Court concluded that the federal constitution's guarantee of effective assistance of counsel requires defense counsel to accurately advise a noncitizen client of the immigration consequences of a guilty plea. . . . [W]hen the immigration consequences under federal law are clearly discernable, *Padilla* requires counsel to accurately advise his client of those consequences. . . . For some convictions, federal law calls for deportation, subject to limited exceptions. . . . In these circumstances, because the likely immigration consequences of a guilty plea are truly clear, counsel has a duty to inform his client of the deportation consequences set by federal law." (Citations omitted; internal quotation marks omitted.) Id., 511–12.

"In *Budziszewski*, our Supreme Court specifically set forth the advice criminal defense counsel must provide to a noncitizen client who is considering pleading guilty to a crime in which deportation pursuant to federal law is a consequence of a conviction." *Echeverria* v. *Commissioner of Correction*, 193 Conn. App. 1, 10, 218 A.3d 1116, cert. denied, 333 Conn. 947, 219 A.3d 376 (2019). In *Budziszewski*, our Supreme Court held: "For crimes designated as aggravated felonies . . .

federal law mandates deportation almost without exception. . . . We conclude that, for these types of crimes, *Padilla* requires counsel to inform the client about the deportation consequences prescribed by federal law. . . . Because noncitizen clients will have different understandings of legal concepts and the English language, there are no precise terms or one-size-fits-all phrases that counsel must use to convey this message. Rather, courts reviewing a claim that counsel did not comply with *Padilla* must carefully examine all of the advice given and the language actually used by counsel to ensure that counsel explained the consequences set out in federal law accurately and in terms the client could understand. In circumstances when federal law mandates deportation and the client is not eligible for relief under an exception to that command, counsel must unequivocally convey to the client that federal law mandates deportation as the consequence for pleading guilty."[4] (Citations omitted.) *Budziszewski* v. *Commissioner of Correction*, supra, 322 Conn. 507.

We first address the petitioner's challenge to the court's determination that Seeger's advice was unequivocal. She argues that, contrary to the court's determination, Seeger's advice failed to comply with the requirements of *Padilla* and *Budziszewski* because it was equivocal. In analyzing this argument, we note that it is undisputed that arson in the first degree, to which charge the petitioner pleaded guilty, constitutes an aggravated felony pursuant to 8 U.S.C. § 1101 (a) (43) and that for such crimes federal law mandates deportation.[5] Because the likely immigration consequences of her *Alford* plea were "truly clear," it was Seeger's "duty to inform his client of the deportation consequences set by federal law." (Internal quotation marks omitted.) Id., 512, citing *Padilla* v. *Kentucky*, supra, 559 U.S. 369. The following exchange, which is highlighted by the petitioner's argument, occurred between the petitioner's habeas counsel and Seeger:

"Q. Do you recall . . . your discussion of the *Alford* doctrine as it relates to immigration consequences in working with the petitioner?

"A. I indicated to her that she should assume that any—any plea to arson one would be an aggravated felony, that she would be deported. The *Alford* plea may or may not have any effect on what immigration authorities, you know, could consider but that she should—she should assume that the *Alford* plea wouldn't rescue her. It could be a layer of protection against the use of, you know, of her statements but that she should assume that she would be deported because of the aggravated felony."

The petitioner does not challenge the court's finding crediting Seeger's testimony but argues that Seeger's use of the words "may or may not" renders his advice equivocal as to the immigration consequences of the

petitioner's *Alford* plea. Although the petitioner focuses on one phrase in Seeger's advice, we examine this claim in light of our Supreme Court's clarification of *Padilla* that reviewing courts "must carefully examine all of the advice given" to determine whether counsel "unequivocally convey[ed] to the client that federal law mandates deportation as the consequence for pleading guilty." *Budziszewski* v. *Commissioner of Correction*, supra, 322 Conn. 507.

Following the cross-examination of Seeger by counsel for the respondent, the Commissioner of Correction, the court asked Seeger to "unpack for us what you meant in your response to [the petitioner's counsel] as it related to the *Alford* plea when you said something like you told [the petitioner] that the *Alford* plea may or may not have any effect on the deportation and removal proceedings, that it would not protect her relating to the conviction but it may act as a shield against the use of her statements." Seeger responded, "my comment to her was it would not help in the deportation but that the immigration authorities are free to, sort of, treat that type of plea whichever way they wish. I did not think that they were bound, you know, to ignore the plea because it was an *Alford* plea, and that was the substance of the conversation." The court then asked: "Did you ever give any indication of any reduction in the strength of the immigration authority's case against her because of an *Alford* plea?" Seeger responded, "I did not." Although Seeger expressed uncertainty as to what effect, if any, an *Alford* plea might have on immigration authorities, he nonetheless advised her that, despite his uncertainty, she should "assume" both that "the *Alford* plea wouldn't rescue her" and that "she would be deported" because arson in the first degree is an aggravated felony.

In addition to the one statement of Seeger on which the petitioner bases her claim, Seeger testified that he advised the petitioner that the immigration consequences of her *Alford* plea to arson in the first degree were deportation or removal. He testified that (1) he was aware of the petitioner's immigration status, (2) he was aware that arson in the first degree would be considered an aggravated felony and (3) he advised her that "a conviction for an aggravated felony would . . . result in her deportation or removal."

As correctly stated by the habeas court, Seeger "made no representation to the petitioner that anything could occur aside from her being deported for an aggravated felony conviction." Accordingly, given the foregoing, Seeger's advice to the petitioner regarding the likelihood of her deportation resulting from her plea to an aggravated felony was accurate, unequivocal, and comported with the requirements of *Padilla* and *Budziszewski*.

The petitioner contends, alternatively, that, even if

Seeger's advice regarding the immigration consequences of her *Alford* plea satisfied the requirements of *Padilla*, his specific advice that her plea "may or may not have any effect on what immigration authorities, you know, could consider" cast doubt on the likelihood of enforcement and "undermined any clarity" of the immigration advice he previously had conveyed. In *Budziszewski* v. *Commissioner of Correction*, supra, 322 Conn. 515–16, our Supreme Court held: "If counsel gave the advice required under *Padilla*, but also expressed doubt about the likelihood of enforcement, the court must also look to the totality of the immigration advice given by counsel to determine whether counsel's enforcement advice effectively negated the import of counsel's advice required under *Padilla* about the meaning of federal law." Assuming Seeger's "may or may not" advice expressed equivocation as to the likelihood of enforcement, we conclude that that advice did not negate the import of his repeated and unequivocal advice stating that, regardless of his uncertainty as to the effect of the *Alford* plea on immigration authorities, the clear consequence of her *Alford* plea was deportation. For the foregoing reasons, we conclude that the habeas court properly concluded that Seeger did not render deficient performance in advising the petitioner of the immigration consequences of her *Alford* plea and properly rejected her claim of ineffective assistance of counsel.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). "A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless. . . . A defendant often pleads guilty under the *Alford* doctrine to avoid the imposition of a possibly more serious punishment after trial." (Citation omitted; internal quotation marks omitted.) *Robles* v. *Commissioner of Correction*, 169 Conn. App. 751, 752 n.1, 153 A.3d 29 (2016), cert. denied, 325 Conn. 901, 157 A.3d 1146 (2017).

[2] The petitioner also alleged in her amended petition that Seeger rendered ineffective assistance of counsel in multiple other ways and additionally alleged that her sentencing counsel, Attorneys Jason Messina and Charley Kurmay, rendered ineffective assistance. The habeas court rejected all of the petitioner's claims. On appeal, the petitioner only challenges the habeas court's rejection of her claim that Seeger provided ineffective assistance in connection with his advice regarding the immigration consequences of her *Alford* plea.

[3] The petitioner also argues that, although the court did not address the prejudice prong, this court may determine that she satisfied that prong based on the record. The respondent, the Commissioner of Correction, argues that the court implicitly determined that the petitioner did not establish prejudice and that such conclusion was proper. Because we conclude that the habeas court properly determined that Seeger had not performed below an objective standard of reasonableness in advising the petitioner regarding the immigration consequences of her *Alford* plea, we need not reach the petitioner's claim regarding prejudice. See *Nieves* v. *Commissioner of Correction*, 169 Conn. App. 587, 597, 152 A.3d 570 (2016), cert. denied, 324 Conn. 915, 153 A.3d 1288 (2017); id., 597 n.13 (well settled that reviewing court can find against petitioner on either ground of *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

[4] The petitioner does not challenge the court's decision on the ground that counsel failed to use terminology she could understand.