## STATE OF CONNECTICUT *v.* CHADWICK ST. LOUIS
## (AC 34621)

Lavine, Alvord and Peters, Js.

---

Argued September 10—officially released October 15, 2013

*Deborah G. Stevenson*, assigned counsel, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *David L. Zagaja*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PER CURIAM. A trial court generally loses jurisdiction over a sentence that it has imposed once that sentence has begun to be served. Practice Book § 43-22 embodies a common-law exception to this rule, wherein a trial court can at any time, even after the sentence has begun, correct an illegal sentence or sentence that has been illegally imposed. The principal issue in this

case is whether the trial court has jurisdiction to address a motion to correct an illegal sentence, filed pursuant to § 43-22, where the defendant's claim does not attack the legality of the sentence or the sentence proceedings. We hold that the trial court does not have such jurisdiction and, accordingly, reverse the judgment and remand the case with direction to render judgment dismissing the motion to correct an illegal sentence.

In a single count information dated March 10, 2009, the state charged the defendant, Chadwick St. Louis, with murder in violation of General Statutes § 53a-54a.[1] The defendant denied his guilt and waived his right to a trial by jury. Following a trial, a three judge panel found the defendant guilty and sentenced him to a term of fifty years imprisonment.[2] The judgment was affirmed in *State* v. *St. Louis*, 128 Conn. App. 703, 707, 18 A.3d 648, cert. denied, 302 Conn. 945, 30 A.3d 1 (2011). On January 9, 2012, the defendant filed the motion in question, arguing that the trial court lacked jurisdiction to sentence him because the prosecution had not established precisely where the murder had taken place. After a hearing, the court denied the motion. This appeal followed.

The facts of the underlying offense are set forth in the defendant's direct appeal, *State* v. *St. Louis*, supra, 128 Conn. App. 706–708, and are as follows: "Christopher Petrozza worked for the defendant in his landscaping business. Petrozza and the defendant also socialized together outside of the workplace, and the defendant became financially indebted to Petrozza.

---

[1] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

[2] The fifty year sentence imposed by the court fell within the statutory limits for the class A felony of murder. General Statutes § 53a-35a (2) provides for "a term not less than twenty-five years nor more than life . . . ."

"On September 14, 2006, Petrozza purchased a 1998 Audi for $5789 in cash. After purchasing the vehicle, Petrozza was short on funds and on September 29, 2006, Petrozza's mother, with whom he resided, advised him to collect the money that was owed to him by the defendant. On this date, Petrozza went to the defendant's home in Manchester. While Petrozza was at the defendant's home, the defendant intentionally caused Petrozza's death by striking him with a skid-steer loader, commonly known as a 'Bobcat.' After killing Petrozza, the defendant took Petrozza's driver's license and buried Petrozza's body in the rear yard of his residence, covering the grave with large ornamental rocks.

"After killing Petrozza, the defendant broke into a vehicle parked at his daughter's day care center and took a purse that contained a checkbook. The defendant went to a credit union and attempted to use Petrozza's license to cash a check from the stolen checkbook that he had forged and made payable to Petrozza.

"On February 19, 2007, the Manchester police arrested the defendant on charges unrelated to the disappearance of Petrozza. The defendant indicated during the booking process that he had information relevant to the individual who was responsible for recent car break-ins. Several days later, the defendant told the police that Petrozza was responsible for the burglaries. In response, the police prepared a warrant for the arrest of Petrozza.

"At his own initiative, the defendant continued to communicate with the Manchester police, the state police and the office of the state's attorney while he was incarcerated. Despite having provided police with information about criminal activity perpetrated by third parties, the defendant was not offered a reduced sentence for the crimes related to his February 19, 2007 arrest. The defendant then began to tell the police about

the existence of a dead body in an effort to receive leniency for the February 19, 2007 arrest. After he met with the Manchester police several times, on June 5, 2007, the defendant admitted to having caused the death of Petrozza and described the circumstances of Petrozza's death as an 'accident.' On June 19, 2007, the police recovered Petrozza's body from the yard of the defendant's residence." (Footnote omitted.)

After being convicted and sentenced, the defendant filed a motion to correct an illegal sentence, pursuant to Practice Book § 43-22.[3] The only argument raised by the defendant in this motion was that "the sentencing statute was inapplicable, when the trial court lacked jurisdiction to try the defendant, to convict him, or to impose the sentence." The court, in denying the motion, stated: "The court does believe that the Appellate Court in their May 17, 2011 decision did indicate that [the claim of lack of jurisdiction] was without merit. The court finds that the allegation that there is no jurisdiction simply because a precise location of where the actual murder may have occurred does not in any way cause a court to vacate a sentence. The sentence that was imposed by the three judge panel was a legal sentence and, therefore, the court affirms that sentencing. So, the motion to correct the illegal sentence is denied."

On appeal, the defendant claims that the court abused its discretion in denying the motion to correct an illegal sentence. As a preliminary matter, we must resolve a jurisdictional matter raised by the state. The state argues that the court did not have subject matter jurisdiction to consider the defendant's motion to correct an illegal sentence, as the defendant did not assert a

---

[3] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

viable claim that the court imposed an illegal sentence. We agree.

"We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Ajadi* v. *Commissioner of Correction*, 280 Conn. 514, 532, 911 A.2d 712 (2006). Our Supreme Court has instructed that "in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *State* v. *Fowlkes*, 283 Conn. 735, 739, 930 A.2d 644 (2007).

"Although the [trial] court loses jurisdiction over [a] case when [a] defendant is committed to the custody of the commissioner of correction and begins serving [his] sentence . . . [Practice Book] § 43-22 embodies a common-law exception that permits the trial court to correct an illegal sentence or other illegal disposition. . . . Thus, if the defendant cannot demonstrate that his motion to correct falls within the purview of § 43-22, the court lacks jurisdiction to entertain it." (Citations omitted; internal quotation marks omitted.) *State* v. *Lewis*, 108 Conn. App. 486, 488, 948 A.2d 389 (2008); see also *State* v. *Lawrence*, 281 Conn. 147, 155, 913 A.2d 428 (2007). "[I]n order for the court to have jurisdiction over a motion to correct an illegal sentence after the sentence has been executed, the sentencing proceeding [itself] . . . must be the subject of the attack." (Internal quotation marks omitted.) *State* v. *Casiano*, 282 Conn. 614, 625, 922 A.2d 1065 (2007). "[T]o invoke successfully the court's jurisdiction with respect to a claim of an illegal sentence, the focus cannot be on what occurred during the underlying conviction." *State* v. *Koslik*, 116 Conn. App. 693, 699, 977 A.2d 275, cert. denied, 293 Conn. 930, 980 A.2d 916 (2009).

"Connecticut courts have considered four categories of claims pursuant to § 43-22. The first category has

addressed whether the sentence was within the permissible range for the crimes charged. . . . The second category has considered violations of the prohibition against double jeopardy. . . . The third category has involved claims pertaining to the computation of the length of the sentence and the question of consecutive or concurrent prison time. . . . The fourth category has involved questions as to which sentencing statute was applicable." (Citations omitted; internal quotation marks omitted.) *State* v. *Lawrence*, supra, 281 Conn. 156–57. "[I]f a defendant's claim falls within one of these four categories the trial court has jurisdiction to modify a sentence after it has commenced. . . . If the claim is not within one of these categories, then the court must dismiss the claim for a lack of jurisdiction and not consider its merits." (Citation omitted.) *State* v. *Koslik*, supra, 116 Conn. App. 698–99.

The defendant's sole claim before the court in filing his motion to correct an illegal sentence was that the court lacked jurisdiction because of the uncertainty of the crime scene's precise location. This claim does not call into question the legality of the sentencing proceeding and does not fall within any of the categories set forth previously. Instead, it is more properly viewed as a collateral attack on the underlying conviction, one that has already been addressed by this court in the defendant's previous appeal, and rejected. See *State* v. *St. Louis*, supra, 128 Conn. App. 729–30 ("[t]here was evidence presented at trial that the crime took place at the defendant's residence, and the court concluded that on September 29, 2006, the defendant killed Petrozza at the defendant's residence in Manchester"). As such, the court lacked jurisdiction to consider the defendant's claim under Practice Book § 43-22 and therefore should have dismissed the defendant's motion, rather than denying it. See *State* v. *Tabone*, 301 Conn. 708, 715, 23 A.3d 689 (2011) ("[w]hen a trial court

mistakenly denies a motion instead of dismissing it for lack of subject matter jurisdiction, the proper remedy is to reverse the order denying the motion and remand the case with direction to dismiss the motion"); see also *State* v. *Francis*, 69 Conn. App. 378, 384–85, 793 A.2d 1224 (holding that trial court improperly denied motion to correct an illegal sentence and remanding to dismiss for lack of jurisdiction), cert. denied, 260 Conn. 935, 802 A.2d 88, cert. denied, 537 U.S. 1056, 123 S. Ct. 630, 154 L. Ed. 2d 536 (2002).

The form of the judgment is improper, the judgment is reversed and the case is remanded with direction to render judgment dismissing the defendant's motion to correct an illegal sentence.