******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ROLANDO ROBLES
(AC 37881)

DiPentima, C. J., and Alvord and Pellegrino, Js.

*Argued September 7—officially released October 25, 2016*

(Appeal from Superior Court, judicial district of Hartford, Miano, J. [judgment]; Alexander, J. [motions to correct illegal sentence; petition for writ of error coram nobis].)

*Rolando Robles*, self-represented, the appellant (defendant).

*Sarah Hanna*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *David L. Zagaja*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The self-represented defendant, Rolando Robles, appeals from the judgment of the trial court dismissing his motion to correct an illegal sentence. The defendant was convicted, following his guilty pleas made pursuant to the *Alford* doctrine,[1] of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), attempt to commit kidnapping in the first degree in violation of General Statutes §§ 53a-49 and 53a-92 (a) (2) (A) and sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (2). On appeal, the defendant, raising a number of constitutional and nonconstitutional issues, claims that the trial court improperly concluded that it lacked subject matter jurisdiction to consider his motion to correct an illegal sentence. The defendant's appellate claims, however, challenge the validity of his conviction rather than his sentence or the sentencing proceeding. We conclude, therefore, that the court properly determined that it lacked subject matter jurisdiction. Accordingly, we affirm the judgment of the trial court.

The following facts and procedural history are relevant to our discussion. On August 29, 2007, the defendant appeared before the court, *Miano, J.*, to enter guilty pleas to the charges pending against him. The defendant intended to plead guilty pursuant to the *Alford* doctrine. The prosecutor recited the factual bases underlying the charges against the defendant.[2] During the plea canvass, a question arose regarding whether the defendant wanted to plead guilty pursuant to the *Alford* doctrine or enter a "straight guilty plea to all three of the charges . . . ." After further discussion, the court accepted the guilty pleas pursuant to the *Alford* doctrine. On October 17, 2007, Judge Miano sentenced the defendant to fifteen years incarceration, execution suspended after time served,[3] and twenty years probation.

On July 22, 2011, the defendant filed a motion to correct an illegal sentence. That motion was denied on November 10, 2011. On September 3, 2014, the defendant filed another motion to vacate or correct an illegal sentence or, in the alternative, for a writ of error coram nobis.[4] The defendant requested that the court vacate or correct the plea disposition and his sentence pursuant to Practice Book § 43-22,[5] or, in the alternative, issue a writ of error coram nobis. He argued that as a result of the new interpretation of our kidnapping statutes as set forth in *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008),[6] the state and the court had committed "numerous constitutional errors" resulting in his sentences[7] being void or subject to correction. On November 20, 2014, the state filed a response to the defendant's motion arguing, inter alia, that the court lacked jurisdiction to consider the defendant's claims.

On March 19, 2015, the court, *Alexander, J.*, issued a memorandum of decision dismissing the defendant's motion. With respect to the Practice Book § 43-22 claim, the court noted that the defendant's arguments essentially challenged the validity of his conviction, and therefore it lacked subject matter jurisdiction. As to the petition for a writ of error coram nobis, the court observed that it lacked subject matter jurisdiction because the petition had been filed untimely.[8]

On appeal, the defendant presents a variety of claims, including that the dismissal of his motion to correct an illegal sentence deprived him of his federal and state constitutional rights to due process, that his conviction for kidnapping constituted plain error and that the court abused its discretion and misapplied Practice Book § 43-22. The state counters that the court properly dismissed the defendant's motion because it challenged his convictions and not his sentence or the sentencing proceeding. We agree with the state.

At the outset, we note that the defendant's claims pertain to the subject matter jurisdiction of the trial court, and therefore present a question of law subject to the plenary standard of review. *State* v. *Koslik*, 116 Conn. App. 693, 697, 977 A.2d 275, cert. denied, 293 Conn. 930, 980 A.2d 916 (2009); see also *State* v. *Bozelko*, 154 Conn. App. 750, 759, 108 A.3d 262 (2015); *State* v. *Abraham*, 152 Conn. App. 709, 716, 99 A.3d 1258 (2014).

"The Superior Court is a constitutional court of general jurisdiction. In the absence of statutory or constitutional provisions, the limits of its jurisdiction are delineated by the common law. . . . It is well established that under the common law a trial court has the discretionary power to modify or vacate a criminal judgment before the sentence has been executed. . . . This is so because the court loses jurisdiction over the case when the defendant is committed to the custody of the commissioner of correction and begins serving the sentence. . . . Because it is well established that the jurisdiction of the trial court terminates once a defendant has been sentenced, a trial court may no longer take any action affecting a defendant's sentence unless it expressly has been authorized to act." (Citation omitted; internal quotation marks omitted.) *State* v. *Monge*, 165 Conn. App. 36, 41–42, 138 A.3d 450, cert. denied, 321 Conn. 924, 138 A.3d 284 (2016); see also *State* v. *Cruz*, 155 Conn. App. 644, 648–49, 110 A.3d 527 (2015).

"[Practice Book] § 43-22 embodies a common-law exception that permits the trial court to correct an illegal sentence or other illegal disposition. . . . Thus, if the defendant cannot demonstrate that his motion to correct falls within the purview of § 43-22, the court lacks jurisdiction to entertain it. . . . [I]n order for the court to have jurisdiction over a motion to correct an

illegal sentence after the sentence has been executed, the sentencing proceeding [itself] . . . must be the subject of the attack. . . . [T]o invoke successfully the court's jurisdiction with respect to a claim of an illegal sentence, the focus cannot be on what occurred during the underlying conviction." (Citations omitted; internal quotation marks omitted.) *State* v. *St. Louis*, 146 Conn. App. 461, 466, 76 A.3d 753, cert. denied, 310 Conn. 961, 82 A.3d 628 (2013); see also *State* v. *Francis*, 322 Conn. 247, 259–60, 140 A.3d 927 (2016).

"Connecticut courts have considered four categories of claims pursuant to [Practice Book] § 43-22. The first category has addressed whether the sentence was within the permissible range for the crimes charged. . . . The second category has considered violations of the prohibition against double jeopardy. . . . The third category has involved claims pertaining to the computation of the length of the sentence and the question of consecutive or concurrent prison time. . . . The fourth category has involved questions as to which sentencing statute was applicable. . . . [I]f a defendant's claim falls within one of these four categories the trial court has jurisdiction to modify a sentence after it has commenced. . . . If the claim is not within one of these categories, then the court must dismiss the claim for a lack of jurisdiction and not consider its merits." (Citation omitted; internal quotation marks omitted.) *State* v. *St. Louis*, supra, 146 Conn. App. 466–67; see also *State* v. *Williams-Bey*, 167 Conn. App. 744, 760–61, A.3d (2016).

As previously noted, the defendant has presented this court with several different claims. Distilled to their essence, however, they share a common denominator; that is, the defendant should not have been convicted of the crimes of kidnapping in the first degree and attempt to commit kidnapping in the first degree under our Supreme Court's decision in *State* v. *Salamon*, supra, 287 Conn. 509. The defendant's appellate claims challenge the validity of his plea, and subsequent conviction, on the kidnapping charges and, therefore, do not fall with the four categories set forth previously. Put another way, the defendant's sentence or sentencing proceeding is not the subject of his attack, and therefore the trial court lacked jurisdiction over his motion to correct an illegal sentence. See *State* v. *Casiano*, 122 Conn. App. 61, 68, 998 A.2d 792, cert. denied, 298 Conn. 931, 5 A.3d 491 (2010); see also *State* v. *Henderson*, 130 Conn. App. 435, 443, 24 A.3d 35 (2011) ("[i]t is clear that [i]n order for the court to have jurisdiction over a motion to correct an illegal sentence after the sentence has been executed, the sentencing proceeding, and not the trial leading to the conviction, must be the subject of the attack" [internal quotation marks omitted]), appeals dismissed, 308 Conn. 702, 66 A.3d 847 (2013) (certification improvidently granted).

Our decision in *State* v. *Brescia*, 122 Conn. App. 601, 606, 999 A.2d 848 (2010), informs both our analysis and conclusion in the present case. In *Brescia*, the defendant claimed that he erroneously had pleaded guilty to the crime of conspiracy to commit forgery in the first degree when the evidence supported only a charge of conspiracy to commit forgery in the second degree. Id., 602. The defendant subsequently filed a motion to correct an illegal sentence, claiming that he had been sentenced for "the wrong crime." (Internal quotation marks omitted.) Id., 604. We affirmed the decision of the trial court to dismiss the motion to correct for lack of subject matter jurisdiction. Id., 604–607. Specifically, we stated: "[T]he subject of the defendant's attack in the present case is the underlying conviction, not the sentencing proceeding. He does not allege that the sentence he received exceeded the prescribed statutory maximum for the crime to which he pleaded guilty. He simply asserts . . . that he was convicted of the wrong crime. . . . Under Connecticut law, that collateral attack on his conviction does not fall within the purview of Practice Book § 43-22." (Citation omitted; internal quotation marks omitted.) Id., 606–607.[9]

In the present case, all of the defendant's appellate claims originate from his contention that his guilty pleas to the kidnapping charges are invalid as a result of *Salamon* and its progeny. Similar to the facts of *Brescia*, the defendant attacks his conviction, and not his sentence or sentencing proceeding, and the trial court, therefore, properly concluded that it lacked jurisdiction. Simply stated, a motion to correct an illegal sentence is not the proper procedural path for the defendant in this case to contest the validity of his guilty pleas following the change to our kidnapping laws.[10]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant is not required to admit his guilt . . . but consents to being punished as if he were guilty to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." (Internal quotation marks omitted.) *Rodriguez* v. *Commissioner of Correction*, 167 Conn. App. 233, 234 n.1, 143 A.3d 630 (2016); *Misenti* v. *Commissioner of Correction*, 165 Conn. App. 548, 551–52 n.2, 140 A.3d 222, cert. denied, 322 Conn. 902, 138 A.3d 932 (2016).

[2] Specifically, the prosecutor stated: "[T]hat's an incident that happened on December 15, 2005, and it was in the area of Sigourney Street and Russ Street. The complainant, the victim, was a seventeen year old female. She was on her way to school at Hartford Public High School when this defendant came up from behind her. He grabbed her and had sexual contact placing his hand on her buttocks area and genital area and that was over her clothing. She was able to push him away.

"He followed her. A short distance later and pulled her by the jacket. He attempted to pull her back behind the apartment building, and these were her words, she was able to break free. Her jacket did rip. And she was able to gain freedom. A later identification was made after she filed this complaint and told family members. One family member had seen him. And she ultimately positively identified the defendant as the person who had done this to her.

"The next incident . . . that happened five days later on December 20, 2005, in the morning hours, 8:40 in the a.m., near the intersection of Capitol Avenue and Laurel Street. This [incident] involved a sixteen year old female. She was walking to school. She observed the defendant following her. He did catch up with her in that area of Capitol Avenue and Laurel Street. He grabbed her from behind and attempted to pull her or drag her into a fenced area. She also fought back and freed herself after a short scuffle with him."

[3] The court noted that the defendant had served approximately twenty-two months of incarceration.

[4] "A writ of error coram nobis is an ancient common-law remedy which authorized the trial judge, within three years, to vacate the judgment of the same court if the party aggrieved by the judgment could present facts, not appearing in the record, which, if true, would show that such judgment was void or voidable. . . . The facts must be unknown at the time of the trial without fault of the party seeking relief. . . . A writ of error coram nobis lies only in the unusual situation [in which] no adequate remedy is provided by law." (Citations omitted; internal quotation marks omitted.) *State* v. *Das*, 291 Conn. 356, 370–71, 968 A.2d 367 (2009).

[5] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

[6] In *Salamon*, our Supreme Court concluded that in order for a defendant to commit a kidnapping in conjunction with another crime, he or she must intend to prevent the victim's liberation for a longer period of time or to a greater degree than what is necessary to commit the other crime. *State* v. *Salamon*, supra, 287 Conn. 542.

[7] In his brief filed in support of his motion, the defendant noted that he had been "re-sentenced" for violating his probation on two separate occasions.

[8] The defendant did not brief any claims on appeal challenging the dismissal of the petition for a writ of coram nobis.

[9] We note that *State* v. *Brescia*, supra, 122 Conn App. 607, is distinguishable from the present case because in that case, the state agreed that the defendant's conviction for forgery in the first degree was improper. "To its credit, the state recognizes that the defendant's conviction for conspiracy to commit forgery in the first degree cannot stand. It concedes that the defendant erroneously was charged with conspiracy to commit forgery in the first degree, rather than in the second degree. The state further acknowledges that the defendant's inability to prevail upon the claims raised herein is not an indication that the mistake which occurred in this case is of no consequence and cannot be challenged, noting the defendant's pending habeas corpus proceeding in the Superior Court. In addition, the state submits that permission to file an untimely appeal from the judgment of conviction is warranted under the circumstances. Doubtless, this appeal is not the final chapter in this story." (Footnote omitted; internal quotation marks omitted.) Id., 607–608. In the present case, the state does not agree with the defendant that his conviction was improper. Our analysis in *Brescia* does provide an example of how a collateral attack of a conviction is not within the limited scope of a motion to correct an illegal sentence filed pursuant to Practice Book § 43-22.

[10] We note that the defendant has challenged the validity of his conviction in a separate case that presently is pending before this court. See *Commissioner of Correction* v. *Robles*, AC 37686.