******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JEFFREY K. WARD
(AC 40534)

Alvord, Sheldon and Moll, Js.*

*Syllabus*

The defendant, who had been convicted, on pleas of guilty, of the crimes of manslaughter in the first degree and assault in the first degree in connection with an incident that occurred at a motel, appealed to this court from the trial court's denial of his motion to correct an illegal sentence. The defendant had a long history of untreated mental health issues for which he began treatment after his arrest. After the court canvassed the defendant, the court accepted his pleas of guilty and sentenced him to a total effective sentence of twenty-five years of incarceration. Thereafter, the defendant filed a motion to correct an illegal sentence, claiming, inter alia, that he was incompetent at the time of his sentencing hearing and, therefore, that his sentence was imposed in an illegal manner. On appeal to this court, the defendant claimed that the trial court improperly dismissed his motion to correct illegal sentence for lack of subject matter jurisdiction. *Held:*

1. The defendant could not prevail on his unpreserved claim that his due process rights, under the federal constitution, were violated when the trial court failed to refer his motion to correct to the sentencing judge, whom the defendant claimed was familiar with the defendant and his mental health issues, and was better situated to consider the issues raised in the motion to correct; this court previously has determined that due process does not require the sentencing court to hear and adjudicate a defendant's motion to correct an illegal sentence or a sentence imposed in an illegal manner, there was no appellate authority in support of the defendant's claim, and due process, which seeks to assure a defendant a fair trial, not a perfect one, does not mandate that a motion to correct an illegal sentence or a sentence imposed in an illegal matter be heard by the judge whom the defendant preferred or who had the greatest familiarity with the defendant.

2. The trial court did not err in dismissing the motion to correct an illegal sentence for lack of subject matter jurisdiction, as the defendant failed to set forth a colorable claim that his sentence was imposed in an illegal manner; the defendant's motion failed to establish any possibility that he was incompetent at the time of sentencing or that there was sufficient information before the sentencing court requiring a competency examination and hearing prior to the defendant's sentencing, although the parties and the sentencing court were aware that the defendant had a history of mental health issues, nothing in the transcripts indicated that he had been incompetent when he was sentenced or that a competency evaluation and hearing prior to sentencing were required, and a police report, psychiatric report and records on which the defendant relied in support of his claim could not be viewed reasonably to support a conclusion that he was incompetent at the time of sentencing, as those records suggested that the defendant had a history of mental health issues and was at risk of experiencing symptoms in the future, but failed to demonstrate that there was any likelihood that he was incompetent when sentenced.

(*One judge dissenting in part and concurring in part*)

Argued February 11—officially released October 29, 2019

*Procedural History*

Substitute information charging the defendant with the crimes of manslaughter in the first degree and assault in the first degree, brought to the Superior Court in the judicial district of Hartford, where the defendant was presented to the court, *Alexander, J.*, on pleas of guilty; judgment of guilty; thereafter, the court, *Dewey, J.*, dismissed the defendant's motion to correct an illegal

sentence, and the defendant appealed to this court. *Affirmed.*

*Aimee Lynn Mahon*, assigned counsel, with whom was *Temmy Ann Miller*, assigned counsel, for the appellant (defendant).

*Sarah Hanna*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *John F. Fahey*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MOLL, J. The defendant, Jeffrey K. Ward, appeals from the judgment of the trial court dismissing his motion to correct a sentence imposed in an illegal manner (motion to correct). On appeal, the defendant claims that the court erred in (1) adjudicating the motion to correct, rather than referring the motion to the sentencing court, and (2) concluding that it lacked subject matter jurisdiction over the motion to correct.[1] We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the appeal. On June 25, 2012, pursuant to a plea agreement, the defendant pleaded guilty to manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1) and assault in the first degree in violation of General Statutes § 53a-59 (a) (1) in connection with an incident that had occurred at a motel in Enfield on September 29, 2011. After canvassing the defendant, the trial court, *Alexander, J.*, accepted the defendant's guilty pleas. On July 23, 2012, following a sentencing hearing, Judge Alexander sentenced the defendant to a period of twenty years of incarceration on the count of manslaughter in the first degree and five years of incarceration on the count of assault in the first degree, to run consecutively to the sentence on the count of manslaughter in the first degree, for a total effective sentence of twenty-five years of incarceration, as agreed to by the parties.[2] The defendant did not appeal from his conviction.

On November 3, 2016, pursuant to Practice Book § 43-22, the defendant filed the motion to correct, accompanied by a memorandum of law and exhibits. Specifically, the defendant contended that his sentence was imposed in an illegal manner on the grounds that (1) he had been incompetent at the time of sentencing and (2) the sentencing court had failed to order, sua sponte, that a competency evaluation and hearing be conducted pursuant to General Statutes § 54-56d before the defendant's sentencing on the basis of information known to the sentencing court.

On November 17, 2016, the trial court, *Dewey, J.*, held a hearing on the motion to correct. At the outset of the hearing, the state argued that the court lacked subject matter jurisdiction over the motion to correct, contending that the defendant's claims should be raised by way of a petition for a writ of habeas corpus. In addition, the state argued that the record did not demonstrate that the defendant's sentence was imposed in an illegal manner. The defendant argued that the court had subject matter jurisdiction over the motion to correct because his alleged incompetence at the time of sentencing and the sentencing court's failure to order, sua sponte, that a competency evaluation and hearing be

conducted before sentencing were germane to the legality of the manner in which his sentence was imposed. Following argument, the court reserved its decision regarding jurisdiction and heard the parties on the merits of the motion to correct. On March 7, 2017, the court issued a memorandum of decision dismissing the motion to correct for lack of subject matter jurisdiction. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

We first address the defendant's claim that Judge Dewey erred in hearing and ruling on the motion to correct, rather than referring the motion to correct to Judge Alexander, the sentencing judge. Specifically, the defendant asserts that due process[3] required the motion to correct to be adjudicated by Judge Alexander, who, as the sentencing judge, had observed and interacted with the defendant, was familiar with the defendant and his mental health issues, and was better situated to consider the issues raised in the motion to correct. We are not persuaded.

As a preliminary matter, the defendant concedes that this claim is unpreserved;[4] he argues, however, that his unpreserved claim is reviewable pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original; footnote omitted.) *State* v. *Golding*, supra, 239–40. "The first two steps in the *Golding* analysis address the reviewability of the claim, while the last two steps involve the merits of the claim." (Internal quotation marks omitted.) *State* v. *Jerrell R.*, 187 Conn. App. 537, 543, 202 A.3d 1044, cert. denied, 331 Conn. 918, 204 A.3d 1160 (2019).

At the outset, in response to a question raised by the state in its appellate brief, we note that the defendant's unpreserved claim does not fall within the ambit of those cases that stand for the proposition that a defendant is not entitled to *Golding* review of an unpreserved claim challenging the legality of a sentence that was not raised by way of a motion to correct an illegal sentence. See, e.g., *State* v. *Gang Jin*, 179 Conn. App. 185, 195–96, 179 A.3d 266 (2018). Here, the unpreserved claim at issue concerns the actions of Judge Dewey

in not referring the motion to correct to Judge Alexander, as opposed to the legality of the sentence imposed by Judge Alexander, and, thus, *Golding* review may be available. See *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 67 n.2, 967 A.2d 41 (2009) (rejecting respondent's argument that *Golding* review inapplicable in all circumstances arising from appeal from judgment of habeas court and concluding that *Golding* review may be available to challenge certain actions of habeas court); see also *State* v. *White*, 182 Conn. App. 656, 673–74, 191 A.3d 172 (concluding that defendant's unpreserved claim, that trial court erred by not recusing itself from hearing merits of motion to correct illegal sentence, failed under third prong of *Golding*), cert. denied, 330 Conn. 924, 194 A.3d 291 (2018).

The defendant's unpreserved claim, that, as a matter of law, the sentencing court was the only judicial authority permitted to decide the motion to correct, meets the first two prongs of *Golding* and, therefore, is reviewable. Turning to the first prong of *Golding*, we conclude that the record is adequate to review the defendant's claim of error. With respect to the second prong of *Golding*, the defendant's due process claim is of constitutional magnitude. See *State* v. *Battle*, 192 Conn. App. 128, 144,    A.3d    (2019) (claim that defendant's right to due process was violated because sentencing court did not act on motion to correct illegal sentence was of constitutional magnitude).

Although the defendant's due process claim is reviewable, we conclude that the claim does not satisfy the third prong of *Golding* in light of this court's recent decision in *State* v. *Battle*, supra, 192 Conn. App. 146–47, wherein this court concluded that due process does not require the sentencing court to hear and adjudicate a defendant's motion to correct an illegal sentence or a sentence imposed in an illegal manner.

In *Battle*, this court observed that the current version of Practice Book § 43-22[5] "does not limit the 'judicial authority' empowered to correct an illegal sentence or a sentence imposed in an illegal manner to the sentencing court." Id., 145. This court further observed that there was no appellate authority "holding that a defendant's motion to correct an illegal sentence or a sentence imposed in an illegal manner *must* be heard and adjudicated by the particular judge who imposed the sentence." (Emphasis in original.) Id. Ultimately, this court concluded: "Due process does not mandate that a motion to correct an illegal sentence or a sentence imposed in an illegal manner be heard by the judge whom the defendant prefers or who has the greatest familiarity with the defendant. Due process seeks to assure a defendant a fair trial, not a perfect one." (Internal quotation marks omitted.) Id., 146–47.

The defendant's due process claim is controlled by *Battle*. Accordingly, we conclude that the defendant in

the present case did not suffer a due process violation and, therefore, his claim fails under the third prong of *Golding*.[6]

## II

We now turn to the defendant's claim that the court erred in dismissing the motion to correct for lack of subject matter jurisdiction. Specifically, the defendant asserts that the court misconstrued his claim in the motion to correct, which led the court to conclude erroneously that it lacked subject matter jurisdiction over the motion to correct. He contends that he raised a colorable claim contesting the legality of the manner in which his sentence was imposed, thereby invoking the court's subject matter jurisdiction. Although we agree with the defendant that the court's analysis in dismissing the motion to correct was flawed, we nevertheless conclude that the defendant failed to present a colorable claim that his sentence was imposed in an illegal manner, and, thus, the court properly dismissed the motion to correct for lack of subject matter jurisdiction.

We begin by setting forth the relevant standard of review and legal principles that guide our analysis of the defendant's claim. "Because the defendant's [claim] pertain[s] to the subject matter jurisdiction of the trial court, [it] . . . present[s] a question of law subject to the plenary standard of review. . . .

"The Superior Court is a constitutional court of general jurisdiction. In the absence of statutory or constitutional provisions, the limits of its jurisdiction are delineated by the common law. . . . It is well established that under the common law a trial court has the discretionary power to modify or vacate a criminal judgment before the sentence has been executed. . . . This is so because the court loses jurisdiction over the case when the defendant is committed to the custody of the commissioner of correction and begins serving the sentence. . . . Because it is well established that the jurisdiction of the trial court terminates once a defendant has been sentenced, a trial court may no longer take any action affecting a defendant's sentence unless it expressly has been authorized to act. . . .

"[Practice Book] § 43-22 embodies a common-law exception that permits the trial court to correct an illegal sentence or other illegal disposition. . . . Thus, if the defendant cannot demonstrate that his motion to correct falls within the purview of § 43-22, the court lacks jurisdiction to entertain it. . . . [I]n order for the court to have jurisdiction over a motion to correct an illegal sentence after the sentence has been executed, the sentencing proceeding [itself] . . . must be the subject of the attack. . . .

"[A]n illegal sentence is essentially one [that] either exceeds the relevant statutory maximum limits, violates

a defendant's right against double jeopardy, is ambiguous, or is internally contradictory. By contrast . . . [s]entences imposed in an illegal manner have been defined as being within the relevant statutory limits but . . . imposed in a way [that] violates [a] defendant's right . . . to be addressed personally at sentencing and to speak in mitigation of punishment . . . or his right to be sentenced by a judge relying on accurate information or considerations solely in the record, or his right that the government keep its plea agreement promises . . . . These definitions are not exhaustive, however, and the parameters of an invalid sentence will evolve . . . as additional rights and procedures affecting sentencing are subsequently recognized under state and federal law." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Jason B.*, 176 Conn. App. 236, 242–44, 170 A.3d 139 (2017). Pursuant to § 54-56d (a), "[a] defendant shall not be tried, convicted *or sentenced* while the defendant is not competent. For the purposes of this section, a defendant is not competent if the defendant is unable to understand the proceedings against him or her or to assist in his or her own defense." (Emphasis added.) A defendant is presumed to be competent, and the burden of proving that a defendant is not competent is on the party raising the issue, or on the state if the trial court raises the issue. See General Statutes § 54-56d (b). In addition, "[i]f, at any time during a criminal proceeding, it appears that the defendant is not competent, counsel for the defendant or for the state, or the court, on its own motion, may request an examination to determine the defendant's competency." General Statutes § 54-56d (c).

In the motion to correct, the defendant claimed that his sentence was imposed in an illegal manner because (1) he had been incompetent at the time of sentencing and (2) the sentencing court had failed to order, sua sponte, that a competency hearing be held prior to sentencing on the basis of information known to the court. The defendant also asserted that he had been incompetent when he had entered his guilty pleas on June 25, 2012, and that he believed that he was entitled to withdraw his guilty pleas if the motion to correct were granted and a new sentencing hearing were ordered; however, he stated expressly in the motion to correct that "[t]he issue [raised in the motion to correct] . . . is [the defendant's] sentencing, and given [the defendant's] incompetence at the time, it was imposed in an illegal manner." In addition, during the hearing held on the motion to correct, defense counsel stressed that the defendant was not challenging the legality of his sentence but, rather, the legality of the manner in which it was imposed. The defendant submitted the following with the motion to correct: four pretrial transcripts and the sentencing transcript; a police report; a report completed following a psychiatric evaluation

of the defendant (psychiatric report), which was filed under seal; and certain of the defendant's psychiatric records from the Department of Correction (psychiatric records), which were filed under seal.

In its memorandum of decision dismissing the motion to correct, the court interpreted the defendant's chief claim to be that "[the defendant] was incompetent at the time of sentencing and, consequently, the sentence was imposed in an illegal manner." The court continued: "The difficulty with the defendant's position is that the sentencing procedure in the present case complied with all constitutional and statutory requirements." Citing *State* v. *Robles*, 169 Conn. App. 127, 133, 150 A.3d 687 (2016), cert. denied, 324 Conn. 906, 152 A.3d 544 (2017), the court determined that the defendant's claims did not fall into any of the categories of claims identified in *Robles* over which a trial court has jurisdiction to modify a sentence after it has commenced. The court then determined that, in substance, the defendant was making an improper collateral attack on his conviction on the basis of his purported incompetence. The court determined that the defendant had entered his guilty pleas knowingly, intelligently, and voluntarily, and that a motion to correct was not the proper vehicle by which to challenge the voluntariness of his pleas.

In addition, the court stated that the defendant "suggests that the trial court has an obligation, sua sponte, to suspect the defendant's competency. Nothing in the record before the trial court reflected an inappropriate mental health status. To the contrary, there was a presumption in favor of competence." The court determined that nothing in the pretrial proceedings demonstrated that the defendant was unable to assist in his defense or to consult with his counsel, and that the court's participation in the pretrial proceedings had not put the court on notice that a more searching inquiry into the defendant's competence to enter his guilty pleas was necessary.

We agree with the defendant that the court's analysis in dismissing the motion to correct was flawed. After the court correctly construed the defendant's claim to be that his sentence was imposed in an illegal manner stemming from his alleged incompetence at the time of sentencing, the court determined that the defendant's claim failed to fall into any of the categories recited in *Robles* and, thus, the court lacked jurisdiction to consider it. In *Robles*, this court stated in relevant part: "Connecticut courts have considered four categories of claims pursuant to [Practice Book] § 43-22. The first category has addressed whether the sentence was within the permissible range for the crimes charged. . . . The second category has considered violations of the prohibition against double jeopardy. . . . The third category has involved claims pertaining to the computation of the length of the sentence and the question of

consecutive or concurrent prison time. . . . The fourth category has involved questions as to which sentencing statute was applicable. . . . [I]f a defendant's claim falls within one of these four categories the trial court has jurisdiction to modify a sentence after it has commenced. . . . If the claim is not within one of these categories, then the court must dismiss the claim for a lack of jurisdiction and not consider its merits." (Internal quotation marks omitted.) *State* v. *Robles*, supra, 169 Conn. App. 133. The foregoing analysis applies, however, only to a claim that a sentence is illegal, as opposed to a claim that a sentence was imposed in an illegal manner.[7] See *State* v. *Evans*, 329 Conn. 770, 779–80, 189 A.3d 1184 (2018) (discussing trial court's jurisdiction to entertain claims challenging legality of sentence and legality of manner in which sentence imposed), cert. denied,      U.S.      , 139 S. Ct. 1304, 203 L. Ed. 2d 425 (2019). Thus, the court erred in relying on *Robles* in adjudicating the defendant's claim that his sentence was imposed in an illegal manner. In addition, the court's determination that it lacked subject matter jurisdiction over the motion to correct because the defendant was collaterally attacking his conviction and the validity of his guilty pleas was erroneous. Although the defendant argued that he would seek to withdraw his guilty pleas *if* the court granted the motion to correct and ordered a new sentencing hearing, the pleadings and the record make clear that the singular focus of the motion to correct was the sentencing proceeding and the legality of the manner in which the defendant's sentence was imposed. Thus, the court's examination of the circumstances surrounding the defendant's guilty pleas and its focus on his competence at the time that he had entered his guilty pleas were misplaced.

Although the court's analysis in dismissing the motion to correct was flawed, we nevertheless conclude that the court properly dismissed the motion to correct for lack of subject matter jurisdiction on different grounds. See *HSBC Bank USA, National Assn.* v. *Lahr*, 165 Conn. App. 144, 151, 138 A.3d 1064 (2016) (affirming judgment of trial court on different grounds). The defendant asserts that he raised a colorable claim in the motion to correct asserting that his sentence was imposed in an illegal manner and, thus, the court had subject matter jurisdiction to entertain the motion to correct.[8] We disagree and conclude that the motion to correct, on its face, did not set forth a colorable claim contesting the legality of the manner in which the defendant's sentence was imposed, thereby depriving the court of subject matter jurisdiction.

"Recently, our Supreme Court explained [in *State* v. *Delgado*, 323 Conn. 801, 810, 151 A.3d 345 (2016)], in addressing the trial court's dismissal on jurisdictional grounds of a motion to correct an illegal sentence that [t]he subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a

party, or by the court sua sponte, at any stage of the proceedings, including on appeal. . . . At issue is whether the defendant has raised a colorable claim within the scope of Practice Book § 43-22 that would, if the merits of the claim were reached and decided in the defendant's favor, require correction of a sentence. . . . In the absence of a colorable claim requiring correction, the trial court has no jurisdiction to modify the sentence. . . .

"Therefore, as made clear by our Supreme Court in *Delgado*, for the trial court to have jurisdiction over a defendant's motion to correct a sentence that was imposed in an illegal manner, the defendant must put forth a colorable claim that his sentence, in fact, was imposed in an illegal manner. A colorable claim is [a] claim that is legitimate and that may reasonably be asserted, given the facts presented and the current law (or a reasonable and logical extension or modification of the current law). . . . For jurisdictional purposes, to establish a colorable claim, a party must demonstrate that there is a possibility, rather than a certainty, that a factual basis necessary to establish jurisdiction exists." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Jason B.*, supra, 176 Conn. App. 244–45.

In *State* v. *Jason B.*, supra, 176 Conn. App. 241–42, the defendant filed a "motion to correct an illegal sentence," asserting that his sentence was imposed in an illegal manner because, on the basis of statements made by the sentencing court at his sentencing hearing, the sentencing court had considered information that was inaccurate and outside of the record when imposing his sentence. The trial court dismissed the defendant's motion for lack of subject matter jurisdiction, concluding that the defendant had not raised a colorable claim that his sentence was imposed in an illegal manner. Id., 242. On appeal, this court affirmed the judgment. Id., 248. After reviewing the record, this court determined that the sentencing court's statements at issue in the defendant's motion to correct could not reasonably be viewed as demonstrating that the court considered information that was inaccurate or outside of the record. Id., 245–47. Accordingly, this court concluded that the defendant's motion to correct, on its face, failed to present a colorable claim invoking the subject matter jurisdiction of the trial court. Id.

Here, in the motion to correct, the defendant asserted that his sentence was imposed in an illegal manner because (1) he had been incompetent at the time of sentencing and (2) the sentencing court had failed to order, sua sponte, a competency evaluation and hearing on the basis of information known to the court when it had sentenced the defendant. The defendant attached several exhibits to the motion to correct to support his assertions. Guided by the rationale of *Jason B.*, and for

the reasons discussed as follows, we conclude that the motion to correct, on its face, did not set forth a colorable claim that the defendant's sentence was imposed in an illegal manner.

In support of the motion to correct, the defendant relied on transcripts of several pretrial proceedings and the sentencing hearing. During a pretrial proceeding on April 10, 2012, defense counsel informed Judge Alexander that the defendant had undergone a psychiatric evaluation during the prior week and that counsel expected to receive the psychiatric report in the immediate future. Judge Alexander stated that she intended to review the psychiatric report "before we can start discussing any disposition . . . ." During a pretrial proceeding on April 26, 2012, defense counsel informed Judge Alexander that additional information needed to be provided to the psychiatrist to complete the psychiatric report for the court's review. During a pretrial proceeding on May 15, 2012, the court stated that it was going to continue the case as a result of ongoing plea discussions. There was no mention of the defendant's psychiatric evaluation or mental health during the May 15, 2012 hearing. During a pretrial proceeding on June 25, 2012, after canvassing the defendant, the trial court accepted the defendant's guilty pleas. There was no discussion of the defendant's psychiatric evaluation or mental health at that time. During the sentencing hearing on July 23, 2012, the prosecutor stated that sentencing the defendant to a total effective sentence of twenty-five years of incarceration was an appropriate disposition as a result of the defendant's "psychiatric background" and "mental health history." In addition, defense counsel represented that the defendant had been experiencing "psychotic symptoms which diminished his capacity to conform his behavior to the law" at the time of the incident in September, 2011. Defense counsel also noted that the psychiatrist hired by defense counsel to evaluate the defendant had diagnosed him with paranoid type schizophrenia; the defendant had been suffering from a mental illness throughout most of his adult life; in October, 2011, following his incarceration, the defendant began receiving mental health treatment and taking anti-psychotic medication; and the defendant's symptoms had improved significantly and, at the time of the sentencing hearing, he was "calm, rational, and . . . [understood] and [appreciated] the seriousness of this situation." Before sentencing the defendant, Judge Alexander acknowledged that the defendant had a "mental health disease," she accepted defense counsel's representations that the Department of Correction was treating the defendant, and she commented that she hoped the defendant would continue to take the proper medication as it was "essential for [his] clear thinking." In the motion to correct, the defendant asserted that the transcripts demonstrated that the parties and Judge Alexander were aware that the

defendant had "serious mental health issues" prior to his sentencing.

Next, the defendant relied on a police report dated September 30, 2011. The police report indicated that during an interview conducted by a police detective on that day, the defendant inserted a pencil approximately five to six inches into his right nostril and, after the detective had intervened, the defendant attempted to stab himself in the neck with the pencil, causing a minor laceration. In the motion to correct, the defendant asserted that the police report helped demonstrate that he had been incompetent at the time that he was sentenced.

The next item on which the defendant relied was the psychiatric report, which included a cover letter dated May 8, 2012. The psychiatrist who authored the psychiatric report based his findings on information that he had gathered from, inter alia, a ninety minute interview with the defendant conducted on April 5, 2012, three and one-half months before sentencing. In the motion to correct, the defendant asserted that the psychiatric report contained findings establishing that the defendant was socially withdrawn as an adolescent[9] and began experiencing auditory hallucinations in his early twenties, which led the defendant to attempt to commit suicide on multiple occasions; the defendant experienced episodes of paranoid ideation and depression; the defendant displayed significant mood symptoms and obsessive and compulsive symptoms, which interfered with his ability to think; the defendant had paranoid type schizophrenia; the defendant had been receiving and responding well to anti-psychotic medication, but he had suffered from psychotic symptoms for many years without treatment, which could contribute to an increased likelihood of worse, chronic, and/or more frequent exacerbations of symptoms; and even with continued treatment, the defendant was at a significant risk of continuing to suffer symptoms of his schizophrenia. The defendant contended that the findings set forth in the psychiatric report helped demonstrate that he had been incompetent when sentenced.

Last, the defendant relied on the psychiatric records, which comprised clinical records from the Department of Correction. In the motion to correct, the defendant asserted that the psychiatric records revealed that in October, 2011, the defendant reportedly was having auditory hallucinations and exhibiting paranoid thought processes, and that he did not believe that his medications were working; on May 4, 2012, the defendant reportedly failed to take several doses of medication; on May 31, 2012, the defendant reportedly was referred to "psych for med. re-evaluation" and reportedly stated that he had "agreed to 20 years for murder" but was not yet sentenced; on July 2, 2012, the defendant reportedly missed multiple doses of medication, although he was

not exhibiting symptoms of his psychosis; on July 11, 2012, the defendant reportedly missed taking his medication "intermittently" and reportedly was hearing voices at night; on July 13, 2012, the defendant reportedly stated that he was going to be sentenced to twenty years of incarceration for manslaughter and that his medication was working to suppress the voices but not his depression; and on August 24, 2012, the defendant reportedly stated that he had been sentenced to thirty years of incarceration for manslaughter. The defendant contended that the psychiatric records helped establish that he had been incompetent at the time of his sentencing.

We conclude that, on its face, the motion to correct did not raise the possibility that the defendant was incompetent at the time of his sentencing or that Judge Alexander had information prior to sentencing that required her to order that a competency evaluation and hearing be conducted. The pretrial and sentencing transcripts indicate that the parties and Judge Alexander were aware that the defendant had a history of mental health issues, but nothing in the transcripts raises any indication that the defendant had been incompetent when he was sentenced or that a competency evaluation and hearing prior to sentencing were required. Likewise, the police report, the psychiatric report, and the psychiatric records cannot be viewed reasonably to support a conclusion that the defendant was incompetent at the time of sentencing.[10] The incident described in the police report, which occurred in September, 2011, well before the defendant's sentencing and before the defendant had begun receiving mental health treatment from the Department of Correction, provides no support for the proposition that the defendant was incompetent at the time of sentencing. The psychiatric report, dated over two months prior to the defendant's sentencing, suggests that the defendant had a history of mental health issues and was at risk of experiencing symptoms in the future, but it does not establish that there was any likelihood that the defendant was incompetent when sentenced. Similarly, the representations in the psychiatric records that, in the weeks and months preceding his sentencing, the defendant had failed to maintain a strict medication schedule and had experienced symptoms associated with his mental health issues do not imply that the defendant was incompetent when sentenced. In addition, the statements reportedly made by the defendant before and after his sentencing suggesting that he misunderstood the length of his sentence cannot be viewed rationally as establishing that he was not competent at the time of his sentencing. Accordingly, the defendant failed to raise a colorable claim in the motion to correct that his sentence was imposed in an illegal manner.[11]

The defendant, citing *State* v. *Evans*, supra, 329 Conn. 770, appears to contend that his claim that his sentence

was imposed in an illegal manner is colorable per se because his claim challenges the actions of the sentencing court and, if successful, would require a new sentencing hearing. We are not persuaded.

In *Evans*, our Supreme Court concluded that the trial court had subject matter jurisdiction over a motion to correct an illegal sentence filed by the defendant, in which the defendant claimed that his sentence was illegal because, inter alia, under United States Supreme Court precedent, the sentence exceeded the relevant statutory limits. Id., 775. In analyzing whether the court had subject matter jurisdiction to entertain the defendant's claim, our Supreme Court stated that "[t]he jurisdictional and merits inquiries are separate; whether the defendant ultimately succeeds on the merits of his claim does not affect the trial court's jurisdiction to hear it. . . . It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. . . . We emphasize, however, that this general principle that there is a strong presumption in favor of jurisdiction . . . in criminal cases . . . is considered in light of the common-law rule that, once a defendant's sentence has begun [the] court may no longer take any action affecting a defendant's sentence unless it expressly has been authorized to act. . . . Thus, the presumption in favor of jurisdiction does not itself broaden the nature of the postsentencing claims over which the court may exercise jurisdiction in criminal cases, but merely serves to emphasize that the jurisdictional inquiry is guided by the plausibility that the defendant's claim is a challenge to his sentence, rather than its ultimate legal correctness. . . . In determining whether it is plausible that the defendant's motion challenged the sentence, rather than the underlying trial or conviction, we consider the nature of the specific legal claim raised therein." (Citations omitted; internal quotation marks omitted.) Id., 784.

Our Supreme Court determined that the defendant had presented a "sufficiently plausible" interpretation of the statutes at issue in that case to render his claim "colorable for the purpose of jurisdiction over his motion [to correct an illegal sentence]" and observed that the defendant was not requesting that his conviction be disturbed but, rather, was seeking a remand for resentencing. Id., 786.

*Evans* supports, rather than conflicts with, our conclusion that the defendant failed to set forth a colorable claim that his sentence was imposed in an illegal manner. In *Evans*, our Supreme Court did not conclude that the defendant had raised a colorable claim contesting the legality of his sentence merely because the defendant's claim was directed to the validity of his sentence and the defendant would be entitled to a new sentencing hearing if the claim was successful; instead, our

Supreme Court determined that the defendant's claim was colorable on the ground that the defendant had set forth a "sufficiently plausible" interpretation of the statutory scheme underlying his contention that his sentence exceeded statutory limits. Id., 785–86. In the present case, in contrast, the defendant's claim is not colorable because the defendant's motion to correct, on its face, failed to establish any possibility that he was incompetent at the time of sentencing or that there was sufficient information before Judge Alexander requiring a competency examination and hearing prior to the defendant's sentencing.

In sum, we conclude that the court lacked subject matter jurisdiction to entertain the motion to correct on the basis that the defendant failed to set forth a colorable claim in the motion to correct that his sentence was imposed in an illegal manner. Therefore, the court properly dismissed the motion to correct for lack of subject matter jurisdiction.

The judgment is affirmed.

In this opinion ALVORD, J., concurred.

\* The listing of the judges reflects their seniority status on this court as of the date of oral argument.

[1] For ease of discussion, we address the defendant's claims in a different order than they are set forth in his principal appellate brief.

[2] In addition to pleading guilty to manslaughter in the first degree and assault in the first degree, the defendant admitted to two counts of violating his probation in violation of General Statutes § 53a-32. Judge Alexander revoked and terminated the defendant's probations.

[3] The defendant does not specify whether his due process claim is raised pursuant to the federal constitution or the state constitution. Therefore, we treat the defendant's claim as limited to the federal constitution. See *State* v. *Alvarez*, 257 Conn. 782, 796 n.10, 778 A.2d 938 (2001).

[4] Not only did the defendant never request that Judge Alexander adjudicate the motion to correct, but the proposed order attached to the motion to correct specifically contemplated Judge Dewey being the deciding authority.

[5] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

[6] In his reply brief, the defendant asserts for the first time that we should invoke our inherent supervisory authority to review his unpreserved claim if we conclude that his claim fails under *Golding*. "Generally, this court does not consider claims raised for the first time in a reply brief." *Perry* v. *State*, 94 Conn. App. 733, 740 n.5, 894 A.2d 367, cert. denied, 278 Conn. 915, 899 A.2d 621 (2006). Even if the defendant's request were proper, we observe that "[b]ypass doctrines permitting the review of unpreserved claims such as [*Golding*] and plain error, are generally adequate to protect the rights of the defendant and the integrity of the judicial system . . . . [T]he supervisory authority of this state's appellate courts is not intended to serve as a bypass to the bypass, permitting the review of unpreserved claims of case specific error—constitutional or not—that are not otherwise amenable to relief under *Golding* or the plain error doctrine. Rather, the integrity of the judicial system serves as a unifying principle behind the seemingly disparate use of our supervisory powers. . . . Thus, a defendant seeking review of an unpreserved claim under our supervisory authority must demonstrate that his claim is one that, as a matter of policy, is relevant to the perceived fairness of the judicial system as a whole, most typically in that it lends itself to the adoption of a procedural rule that will guide the lower courts in the administration of justice in all aspects of the criminal process." (Internal quotation marks omitted.) *State* v. *Leach*, 165 Conn. App. 28, 35–36, 138 A.3d 445, cert. denied, 323 Conn. 948, 169 A.3d 792 (2016). We see no reason to invoke our supervisory powers here.

[7] The excerpt in *Robles* cited by the trial court quotes language that was first set forth by our Supreme Court in *State* v. *Lawrence*, 281 Conn. 147, 156–57, 913 A.2d 428 (2007), in analyzing the parameters of a claim that a sentence is illegal.

[8] On June 24, 2019, after the parties had submitted their respective appellate briefs and following oral argument, we, sua sponte, ordered the parties to file supplemental briefs addressing the following question: "Whether the facts pleaded by the defendant in support of his motion to correct a sentence imposed in an illegal manner were sufficient to state a colorable claim of incompetency at sentencing. See *State* v. *Mukhtaar*, 189 Conn. App. 144, 150 n.6., 207 A.3d 29 (2019); *State* v. *Jason B.*, [supra], 176 Conn. App. [244–45]." The parties filed their respective supplemental briefs on July 8, 2019.

[9] The defendant was born in 1977.

[10] There is nothing in the record to suggest that Judge Alexander had been provided with the police report, the psychiatric report, or the psychiatric records prior to sentencing, and, thus, Judge Alexander could not have relied on those documents to consider ordering that a competency evaluation and hearing be conducted.

[11] We observe that in *State* v. *Mukhtaar*, supra, 189 Conn. App. 149–50, the defendant appealed from a judgment dismissing his motion to correct an illegal sentence in which he asserted that his sentence was illegal because, inter alia, the trial court had failed to order a competency hearing on his behalf before or after his criminal trial. This court concluded that the trial court lacked jurisdiction to entertain that claim because the defendant was not attacking the sentencing proceeding itself. Id., 150. In a footnote, this court additionally stated that "a claim regarding a defendant's competency at the sentencing proceeding; see General Statutes § 54-56d (a); or a claim that the court failed to inquire, sua sponte, into a defendant's competency at the sentencing proceeding when there is sufficient evidence at that proceeding to raise a reasonable doubt as to whether that defendant can understand the proceeding or assist in his or her defense therein; *State* v. *Yeaw*, 162 Conn. App. 382, 389–90, 131 A.3d 1172 (2016); would fall within the jurisdiction of the trial court for the purpose of a motion to correct an illegal sentence filed pursuant to Practice Book § 43-22." Id., 150 n.6. Our conclusion that the court lacked subject matter jurisdiction over the motion to correct in the present case does not conflict with the aforementioned language in *Mukhtaar*. If the defendant had raised a colorable claim in the motion to correct regarding his competency at the time of his sentencing or the sentencing court's failure to order that a competency evaluation and hearing be conducted, then the court would have had subject matter jurisdiction over the motion. Because the defendant failed to raise a colorable claim in the motion to correct, however, the court lacked subject matter jurisdiction to entertain the motion.