******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* KAREEM LEACH
(AC 37018)

Prescott, Mullins and Pellegrino, Js.

*Argued January 6—officially released April 26, 2016*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Comerford, J.)

*Glenn W. Falk*, assigned counsel, for the appellant
(defendant).

*Laurie N. Feldman*, special deputy assistant state's
attorney, with whom, on the brief, were *David I. Cohen*,
state's attorney, and *James Bernardi*, supervisory assis-
tant state's attorney, for the appellee (state).

*Opinion*

PELLEGRINO, J. The defendant, Kareem Leach, appeals from the judgment of conviction, rendered following a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (5) and robbery in the first degree in violation of General Statutes § 53a-134 (a) (2). The defendant claims that the court's jury instructions were one-sided, favoring the state, and deprived him of a fair trial. We conclude that the defendant implicitly waived this unpreserved claim. Accordingly, we affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On January 13, 2013, the defendant met with his acquaintance, Anthony Jean-Pierre, and proposed that they rob a drug dealer. Jean-Pierre thought that another acquaintance, Leah Socci, would be an easy target because she was a female and unlikely to call the police. Socci received a text message from Jean-Pierre, indicating that he was interested in purchasing an ounce of marijuana. Jean-Pierre designated a meeting place to complete the purchase. Socci's friend, Julian Serrano, agreed to obtain the marijuana and insisted on accompanying Socci to the meeting place. Allison Marucci, another friend of Socci, drove Socci and Serrano to meet Jean-Pierre, with Socci in the front passenger seat and Serrano in the backseat. Upon arriving at the meeting place, Jean-Pierre walked up to the car and joined Serrano in the backseat. Serrano then showed Jean-Pierre the marijuana and indicated the price. Jean-Pierre told Serrano that his cousin was waiting in the parking lot and would complete the purchase. Marucci drove to the parking lot and approached the defendant. Jean-Pierre exited the vehicle, and the defendant entered the backseat with Serrano. As Serrano was preparing the marijuana, the defendant pointed a gun at him and told him to "give it up." As Serrano attempted to push the gun away, the men struggled, and the defendant shot Serrano in the leg, warning him not to move or he would shoot again. The defendant took Serrano's marijuana and money, exited the car, and ran out of sight with Jean-Pierre.

Socci and Marucci identified Jean-Pierre to the police as the man who had accompanied the defendant. Jean-Pierre was arrested the day after the shooting, and he identified the defendant as the gunman. At trial, Jean-Pierre testified against the defendant with the expectation that he would receive leniency in the current case and another case in exchange for giving truthful testimony.

The defendant was convicted of robbery in the first degree with a deadly weapon and assault in the first degree by means of the discharge of a firearm. The defendant was sentenced to a total effective term of fourteen years imprisonment and six years special

parole. This appeal followed.

On appeal, the defendant claims that the court gave imbalanced jury instructions that (1) warned against sympathy for the defendant but not against sympathy for the victim, (2) instructed the jury that it should not be concerned with the punishment of the accused, but then told the jury that the state is concerned with having "a guilty person punished," (3) instructed the jury that the state is looking for it to act firmly, fairly, and honestly in upholding the law of the land by rendering a guilty verdict, but not by rendering a not guilty verdict, and (4) suggested that the state alone is interested in the safety and well-being of all citizens and in the protection of life and property, and that these interest can only be served by a guilty verdict. The defendant concedes that these specific claims were not preserved. According to the defendant, the court's imbalanced instructions deprived him of a fair trial. The state contends that the defendant waived these claims. We agree with the state and conclude that, pursuant to *State* v. *Kitchens*, 299 Conn. 447, 480, 10 A.3d 942 (2011), the defendant waived any claim regarding the court's jury instructions.

"Connecticut courts have deemed a claim of instructional error implicitly waived when the defense failed to take exception to, and acquiesced in, the jury instructions following one or more opportunities to review them." Id. "Whether a defendant waives the right to challenge jury instructions is a question of law over which we exercise plenary review. . . . Relevant to the issue of waiver in the context of jury instruction claims, our Supreme Court stated that when the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal. Such a determination by the reviewing court must be based on a close examination of the record and the particular facts and circumstances of each case. . . . To determine whether . . . the defendant implicitly waived his claim of instructional error, we . . . turn to a close examination of the record and the particular facts and circumstances of [the] case." (Citations omitted; internal quotation marks omitted.) *State* v. *Bialowas*, 160 Conn. App. 417, 426, 125 A.3d 642 (2015).

The record reveals that the court provided counsel with a draft of the proposed jury charge on either March 20 or March 21, 2014. Before adjourning on March 25, 2014, at the end of the second day of evidence, the trial court had a discussion with counsel regarding the proposed jury charge. Defense counsel stated to the

court that he had looked at the proposed charge.

Two days later, after the defense rested on March 27, 2014, the court went through its proposed instructions with counsel, and defense counsel commented on various changes, none of which involved the particular instructions that the defendant challenges on appeal. The court stated that it had received a marked up draft of the proposed charge from defense counsel. The court further stated that counsel had "been kind enough to review the draft provided and make commentary thereon, made whatever changes they deemed appropriate within the confines of the law."

When the court reached the portion of the charge that the defendant now contests, the following colloquy took place:

"The Court: And then my conclusory statement has always been the same with some minor modifications over the years to comply with . . . the law the Supreme Court has directed trial judges to omit or add. And I think it's pretty straightforward. Is there anything else that should remain part of the record? Any additions, deletions, subject to exceptions being taken on delivery?

"Defense Counsel: No, Your Honor."

The following day, after closing arguments, the court delivered the charge to the jury, after which it asked defense counsel if he had any exceptions to the charge and counsel took a nonspecific, general exception to the charge.[1]

Although our case law does not provide an exact definition of what constitutes a meaningful opportunity for review under *Kitchens*, prior decisions of this court have held that an opportunity to review a proposed charge overnight amounts to an opportunity for meaningful review. See, e.g., *State* v. *Bialowas*, supra, 160 Conn. App. 427–28; *State* v. *Lee*, 138 Conn. App. 420, 453–54, 52 A.3d 736 (2012); *State* v. *Fontaine*, 134 Conn. App. 224, 231, 40 A.3d 331, cert. denied, 304 Conn. 926, 41 A.3d 1052 (2012).

Here, we are persuaded that the defense had a meaningful opportunity to review the court's proposed charge. The court gave defense counsel a copy of the proposed charge on or about March 21, 2014, and gave the charge to the jury on March 28, 2014. On March 25, 2014, defense counsel indicated that he had looked at the charge. On March 27, 2014, six days after defense counsel initially received the proposed charge, the court asked him whether there were "[a]ny additions, deletions, subject to exceptions being taken on delivery?" and defense counsel responded, "[n]o."

"The mechanism by which a right may be waived . . . varies according to the right at stake. . . . For certain fundamental rights, the defendant must person-

ally make an informed waiver. . . . For other rights, however, waiver may be effected by action of counsel. . . . This court has stated that among the rights that may be waived by the action of counsel in a criminal proceeding is the right of a defendant to proper jury instructions." (Citation omitted; internal quotation marks omitted.) *State* v. *Kitchens*, supra, 299 Conn. 467. Defense counsel was given several days to review the proposed charge and had multiple opportunities to object. Counsel showed his familiarity with the charge, indicated the concerns he had, and requested changes he deemed appropriate. After a close examination of the record, we conclude that the representations of defense counsel, and his failure to request additional time to examine the instructions as proposed, reflected an acquiescence to those instructions. See *State* v. *Bialowas*, supra, 160 Conn. App. 428–29. Accordingly, the defendant implicitly waived all objections that he did not raise, including his claim that the court delivered one-sided jury instructions that deprived him of a fair trial.

The defendant further argues that although he did not preserve his claim, he is entitled to review pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). "A constitutional claim that has been waived does not satisfy the third prong of the *Golding* test because, in such circumstances, we simply cannot conclude that injustice [has been] done to either party . . . or that the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial . . . ." (Internal quotation marks omitted.) *State* v. *Kitchens*, supra, 299 Conn. 467; see *State* v. *Mungroo*, 299 Conn. 667, 675, 11 A.3d 132 (2011) ("the defendant has waived her claim of instructional error and, therefore . . . it fails under the third prong of *Golding*"). Thus, the defendant's claim fails under *Golding*'s third prong.

The defendant also seeks review pursuant to this court's supervisory authority over the administration of justice. We decline to invoke our supervisory powers to review the defendant's claim. "[B]ypass doctrines permitting the review of unpreserved claims such as [*Golding*] and plain error, are generally adequate to protect the rights of the defendant and the integrity of the judicial system . . . . [T]he supervisory authority of this state's appellate courts is not intended to serve as a bypass to the bypass, permitting the review of unpreserved claims of case specific error—constitutional or not—that are not otherwise amenable to relief under *Golding* or the plain error doctrine. Rather, the integrity of the judicial system serves as a unifying principle behind the seemingly disparate use of our supervisory powers. . . . Thus, a defendant seeking review of an unpreserved claim under our supervisory authority must demonstrate that his claim is one that, as a matter of policy, is relevant to the perceived fairness of the judicial system as a whole, most typically

in that it lends itself to the adoption of a procedural rule that will guide the lower courts in the administration of justice in all aspects of the criminal process." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Elson*, 311 Conn. 726, 768, 91 A.3d 862 (2014). We see no reason to exercise our supervisory powers to review the defendant's claim because the trial court's jury instructions do not create a perception that our judicial system is unfair.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Such a general exception is not enough to disavow waiver. "[W]e unequivocally reject as legally unsupportable the assertion that counsel may expressly disavow waiver by informing the trial court that he is unaware of any constitutional infirmities in the jury instructions." (Internal quotation marks omitted.) *State* v. *Kitchens*, supra, 299 Conn. 488 n.25.