******************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# KAREEM LEACH *v.* COMMISSIONER OF CORRECTION
## (AC 44228)

Bright, C. J., and Alexander and Suarez, Js.

*Syllabus*

The petitioner, who had been convicted, following a jury trial, of robbery in the first degree and assault in the first degree, sought a writ of habeas corpus, claiming that his trial counsel, R, had provided ineffective assistance as a result of R's failure to meaningfully explain the state's plea offer and to review and explain certain surveillance video evidence prior to plea negotiations and trial. Following a hearing, the habeas court denied the petition. Thereafter, the habeas court denied the petition for certification to appeal, and the petitioner appealed to this court. *Held* that the habeas court did not abuse its discretion in denying the petition for certification to appeal, the petitioner having failed to demonstrate that his claims involved issues that were debatable among jurists of reason, that a court could resolve the issues in a different manner or that the questions raised were adequate to deserve encouragement to proceed further: after a thorough review of the record and briefs, and based on the underlying facts as found by the habeas court, this court concluded that the habeas court properly found that R did not provide ineffective assistance of counsel, as the habeas court credited R's testimony that he explained the state's plea offer of six years of incarceration and that the petitioner understood the terms of the offer, the court did not credit the petitioner's testimony that he misunderstood the state's offer, the court found that R was generally aware of what the surveillance video depicted prior to viewing the video, R's failure to view the video before trial did not negate his pretrial discussions with the petitioner regarding the content of the video, and it was the petitioner who initially made R aware of the existence of the video; accordingly, R provided the petitioner with adequate information on which he could make an informed decision as to whether to accept or reject the state's plea offer.

Argued February 8—officially released April 12, 2022

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Chaplin, J.*; judgment denying the petition; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court. *Appeal dismissed.*

*Peter G. Billings*, assigned counsel, with whom, on the brief, was *Stephanie K. Toronto*, for the appellant (petitioner).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, were *Paul J. Ferencek*, state's attorney, and *Juliana Waltersdorff*, assistant state's attorney, for the appellee (respondent).

*Opinion*

ALEXANDER, J. The petitioner, Kareem Leach, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court (1) abused its discretion by denying his petition for certification to appeal and (2) improperly concluded that his trial counsel had not provided ineffective assistance. We disagree that the court abused its discretion in denying the petition for certification to appeal and, accordingly, dismiss the appeal.

The following facts and procedural history are relevant to this appeal. The petitioner was involved in an incident that occurred on January 13, 2013, and, after a jury trial, he was convicted of robbery in the first degree with a deadly weapon in violation of General Statutes § 53a-134 (a) (2), and assault in the first degree by means of the discharge of a firearm in violation of General Statutes § 53-59 (a) (5). *State* v. *Leach*, 165 Conn. App. 28, 29?31, 138 A.3d 445, cert. denied, 323 Conn. 948, 169 A.3d 792 (2016). He was sentenced to a total effective term of fourteen years of imprisonment and six years of special parole. Id., 31.

The petitioner initiated this habeas action and, on January 16, 2019, filed an amended petition which contained one count alleging ineffective assistance of his criminal trial counsel, Attorney Neal Rogan. Relevant to this appeal, the petitioner claimed that Rogan failed to (1) meaningfully explain the state's plea offer to him and (2) review and explain certain surveillance video evidence prior to trial.

A trial on the habeas petition was held on January 31, 2020. On July 2, 2020, the court issued a memorandum of decision in which it denied the habeas petition, finding that the petitioner had failed to demonstrate that Rogan had rendered deficient performance. On July 17, 2020, the petitioner filed a petition for certification to appeal, which the court denied. This appeal followed.

I

We first address the petitioner's claim that the court abused its discretion in denying his petition for certification to appeal. We disagree.

General Statutes § 52-470 (g) provides: "No appeal from the judgment rendered in a habeas corpus proceeding brought by or on behalf of a person who has been convicted of a crime in order to obtain such person's release may be taken unless the appellant, within ten days after the case is decided, petitions the judge before whom the case was tried or, if such judge is unavailable, a judge of the Superior Court designated by the Chief Court Administrator, to certify that a question is involved in the decision which ought to be reviewed by the court having jurisdiction and the judge

so certifies."

"As our Supreme Court has explained, one of the goals our legislature intended by enacting this statute was to limit the number of appeals filed in criminal cases and [to] hasten the final conclusion of the criminal justice process . . . . [T]he legislature intended to discourage frivolous habeas appeals. . . . [Section] 52-470 [g] acts as a limitation on the scope of review, and not the jurisdiction, of the appellate tribunal. . . .

"Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the [disposition] of his [or her] petition for [a writ of] habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he [or she] must demonstrate that the denial of his [or her] petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he [or she] must then prove that the decision of the habeas court should be reversed on its merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . .

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by [our Supreme Court] for determining the propriety of the habeas court's denial of the petition for certification." (Footnote omitted; internal quotation marks omitted.) *Harris* v. *Commissioner of Correction*, 205 Conn. App. 837, 843?44, 257 A.3d 343, cert. denied, 339 Conn. 905, 260 A.3d 484 (2021).

The petitioner requested certification to appeal the following issues, inter alia: "Whether the habeas court erred in finding that [the petitioner] did not prove ineffective assistance of counsel as to [Rogan] in that . . . Rogan failed to meaningfully explain the state's plea offer . . . [and] Rogan failed to review surveillance evidence to prepare for trial . . . ."[1]

For the reasons set forth in part II of this opinion, we conclude that the petitioner has failed to demonstrate that (1) his claims involve issues that are debatable among jurists of reason, (2) a court could resolve

the issues in a different manner, or (3) the questions are adequate to deserve encouragement to proceed further. See *Harris* v. *Commissioner of Correction*, supra, 205 Conn. App. 844. Accordingly, we conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal.

## II

Turning to his substantive claims on appeal, the petitioner asserts that the court improperly concluded that Rogan had not provided ineffective assistance of counsel. Specifically, the petitioner alleged ineffective assistance as a result of Rogan's failure to (1) meaningfully explain the state's plea offer to him, and (2) review and explain certain surveillance video evidence prior to plea negotiations and trial.

We begin by setting forth our standard of review and the legal principles governing ineffective assistance of counsel claims. "Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Humble* v. *Commissioner of Correction*, 180 Conn. App. 697, 703?704, 184 A.3d 804, cert. denied, 330 Conn. 939, 195 A.3d 692 (2018).

"In *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he [or she] must show that counsel's assistance was so defective as to require reversal of [the] conviction . . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . . Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he [or she] fails to meet either prong. . . .

"To satisfy the performance prong [of the *Strickland* test] the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." (Internal quotation marks omitted.) *Anderson* v. *Commissioner of Correction*, 201 Conn. App. 1, 12, 242 A.3d 107, cert. denied, 335

Conn. 983, 242 A.3d 105 (2020).

A

The petitioner first argues that the habeas court improperly denied his habeas petition because Rogan rendered deficient performance when he failed to meaningfully explain the state's plea offer to him prior to the petitioner rejecting the offer and proceeding to trial. We disagree.

The following additional facts, as found by the habeas court, are relevant to our resolution of this claim. During pretrial plea negotiations, the state extended an offer of twelve years of incarceration, execution suspended after six years, followed by five years of probation. The petitioner rejected the state's offer and elected to proceed to trial.

"At [the habeas] trial, the petitioner testified that he briefly discussed the state's offer with [Rogan]. He testified that, as a result of that discussion, he understood the state's offer to require him to serve twelve years [of] incarceration. He testified that he did not understand that it meant that he would agree to serve six years [of] incarceration. He testified that, had he understood the offer correctly, he would have accepted the state's offer, instead of going to trial. The petitioner further testified that he had prior convictions, at least one of which included a split sentence . . . .

"[Rogan] testified that he discussed the offer at length with the petitioner, who was adamant that he . . . would not take any offer and that he wanted a trial. For that reason, the case proceeded on a speedy trial basis. He testified that he detailed for the petitioner the state's plea offer and the maximum exposure the petitioner faced if he went to trial. [Rogan] testified that he explained that the offer included six years [of] incarceration to the petitioner. He testified that the petitioner had familiarity with the criminal justice system and that he had no doubt that the petitioner understood the terms of the state's plea offer.

"The court credits [Rogan's] testimony that the petitioner understood the state's plea offer and that they discussed it in great detail. The court does not credit the petitioner's testimony that he understood the state's plea offer to include twelve . . . years of incarceration, instead of six . . . years of incarceration. The court finds that the petitioner failed to provide sufficient credible evidence to demonstrate that [Rogan] failed to meaningfully explain the state's plea offer."

After our thorough review of the record and briefs, and on the basis of the underlying facts found by the habeas court, we agree with the habeas court that Rogan meaningfully explained the state's plea offer to the petitioner. The court's conclusion is based on a credibility determination as well as a proper application of the law. "[I]t is well established that a reviewing

court is not in the position to make credibility determinations. . . . This court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *Martinez* v. *Commissioner of Correction*, 147 Conn. App. 307, 312, 82 A.3d 666 (2013), cert. denied, 311 Conn. 917, 85 A.3d 652 (2014).

The court credited Rogan's testimony that he explained the state's offer of six years of incarceration and that the petitioner understood the terms of the state's plea offer. The court explicitly stated that it did not credit the petitioner's testimony that he understood the state's offer was to serve twelve years of incarceration. On the basis of these credibility determinations, the court found that the petitioner had failed to prove that Rogan rendered deficient performance. The record supports the court's conclusion that Rogan meaningfully explained the plea offer to the petitioner, that the petitioner understood Rogan's explanation of the plea agreement, and that the petitioner rejected the offer and demanded a speedy trial. Therefore, the petitioner's claim must fail.

B

The petitioner next argues that Rogan rendered deficient performance by failing to review and explain certain surveillance video evidence[2] prior to pretrial plea negotiations and trial. Specifically, the petitioner asserts that Rogan's representation was deficient because he "allowed the petitioner to reject the pretrial plea offer without either himself or the petitioner being aware of what evidence was contained in the surveillance video" and that Rogan's failure to meaningfully explain the surveillance video to the petitioner "resulted in the petitioner going to trial under the mistaken impression that the state did not have significant evidence against him."

In its memorandum of decision, the court found the following relevant facts: "[Rogan] testified that he met with the petitioner several times to discuss his case. . . . Rogan testified that *the petitioner* made him aware of the surveillance video. He testified that there were issues opening the video file and that he was not able to view the video until at trial, but before any pertinent testimony was given. [Rogan] further testified that he was generally aware of what the video depicted prior to viewing the video. He then testified that he and an associate attorney reviewed and discussed at length the implications of the surveillance video with the petitioner prior to any witness testifying about the surveillance video.

"Upon review of the testimony and the exhibits, the court finds that the petitioner failed to provide credible

evidence that [Rogan] failed to discuss or meaningfully explain the state's evidence prior to trial. . . . Regarding the surveillance video, both the petitioner and [Rogan] testified that the petitioner did not have occasion to view the video prior to trial. The court credits [Rogan's] testimony as to the inability to open the video file. The court finds that the petitioner and [Rogan] viewed the video prior to any evidence being introduced regarding the video. *The court finds that [Rogan's] failure to show the video to the petitioner prior to trial does not negate his pretrial discussions with the petitioner regarding the content of the video* prior to any evidence being taken regarding the video. For those reasons, the court finds that the petitioner failed to provide sufficient credible evidence to demonstrate that [Rogan] failed to meaningfully explain the state's evidence prior to trial." (Emphasis added.)

The court concluded by determining that "[Rogan] was generally aware of what was depicted in the video prior to reviewing the video at trial and that he and an associate attorney reviewed the video at length with the petitioner prior to the presentation of any evidence regarding the video . . . to the jury. For these reasons, the court finds that [Rogan] failed to review the surveillance footage prior to trial, however, such failure did not cause [Rogan's] representation of the petitioner at his underlying criminal trial to fall below an objective standard of reasonableness. Therefore, the petitioner's claim must fail."

We next set forth the legal principles relevant to claims of ineffective assistance of counsel in the plea bargain context. "Pretrial negotiations implicating the decision whether to plead guilty is a critical stage in criminal proceedings . . . . Although this decision is ultimately made by the [petitioner], the [petitioner's] attorney must make an informed evaluation of the options and determine which alternative will offer the [petitioner] the most favorable outcome." (Citation omitted; internal quotation marks omitted.) *Sanders* v. *Commissioner of Correction*, 169 Conn. App. 813, 825, 153 A.3d 8 (2016), cert. denied, 325 Conn. 904, 156 A.3d 536 (2017).

"[C]ounsel performs effectively and reasonably when he . . . provides [the petitioner] with adequate information and advice upon which the [petitioner] can make an informed decision as to whether to accept the state's plea offer. . . . We are mindful that [c]ounsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness . . . . Accordingly, [t]he need for recommendation depends on countless factors, such as the [petitioner's] chances of prevailing at trial, the likely disparity in sentencing after a full trial compared to the guilty plea . . . whether [the] [petitioner] has maintained his innocence, and the [petitioner's] comprehension of the vari-

ous factors that will inform [his] plea decision." (Internal quotation marks omitted.) *Salmon* v. *Commissioner of Correction*, 178 Conn. App. 695, 710–11, 177 A.3d 566 (2017).

Further, "[t]here is no per se rule requiring specific conduct of defense attorneys during plea negotiations. . . . Instead, we must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . . The parameters of appropriate advice required during plea negotiations are determined by a fact specific inquiry in which we consider whether an attorney's performance fell below an objective standard of reasonableness." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Moore* v. *Commissioner of Correction*, 338 Conn. 330, 341–42, 258 A.3d 40 (2021).

After our thorough review of the record and briefs, and on the basis of the underlying facts found by the habeas court, we agree with the court's conclusion that Rogan did not render deficient performance by failing to view the surveillance video evidence prior to the petitioner's rejection of the state's plea offer and the start of trial. Notably, it was the petitioner who initially made Rogan aware of the existence of such video. The court found that Rogan generally was aware of what the video depicted prior to viewing the video and that Rogan's failure to view the video before trial did not negate his pretrial discussions with the petitioner regarding the content of the video. Therefore, although Rogan did not view the video prior to the start of trial, he was aware of and discussed the general contents of the video with the petitioner prior to trial and in relation to the state's plea offer.[3] Despite Rogan's pretrial discussions with him, including discussions regarding the surveillance video, the petitioner chose to reject the state's plea offer and proceed to trial. The record supports the habeas court's conclusion that the petitioner failed to demonstrate that Rogan rendered deficient performance by not viewing the surveillance video prior to trial because, given the facts and circumstances of the petitioner's case, Rogan provided the petitioner with adequate information with which he could make an informed decision as to whether to accept or reject the state's plea offer.

As to his claims of ineffective assistance of counsel, the petitioner has failed to demonstrate that the decision of the habeas court should be reversed on its merits. As indicated in part I of this opinion, the petitioner has not established that (1) his claims involve issues that are debatable among jurists of reason, (2) a court could resolve the issues in a different manner, or (3) the questions are adequate to deserve encouragement to proceed further. See *Harris* v. *Commissioner of Correction*, supra, 205 Conn. App. 844. Accordingly, we

conclude that the petitioner has failed to demonstrate that the court abused its discretion in denying his petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] The petitioner also requested certification to appeal "[w]hether the habeas court erred in finding that [the petitioner] did not prove ineffective assistance of counsel as to [Rogan] in that . . . Rogan failed to meaningfully explain the state's evidence . . . Rogan failed to properly cross-examine witnesses . . . Rogan failed to move to preclude surveillance video; and/ or . . . Rogan failed to object to improper jury instructions." None of these issues has been raised on appeal.

[2] The surveillance video was taken from a business that was located near the crime scene. At the petitioner's criminal trial, the state argued that the surveillance video depicted the petitioner and his codefendant, Anthony Jean Pierre, near the scene of the crime, but it did not capture or record any part of the crime itself. At the habeas trial, the petitioner testified that he could not identify anyone in the video footage, including himself, due to the poor quality of the video. Rogan similarly testified that the video was of poor quality and that he had not objected to the use of the video at the petitioner's criminal trial because no one was clearly identified in the video.

[3] Although the petitioner contends that Rogan's failure to view the surveillance video resulted in the petitioner choosing to proceed to trial "under the mistaken impression that the state did not have significant evidence against him," the parties do not dispute that the video was poor quality and did not affirmatively identify the petitioner. Therefore, the petitioner's contention that viewing the poor quality surveillance video would have altered his impression of the state's evidence against him is unavailing, especially in light of Rogan's testimony that the petitioner "was adamant that he . . . would not take any offer and that he wanted to go to trial."

————————————————